## 9678.   SCOTT *v.* ROME RAILWAY & LIGHT COMPANY.

1. A public-utility corporation furnishing current for electric lights to an individual user who constructs, owns, and maintains a connecting private line and all attached equipment, wholly free from the control or inspection of the corporation, can not be held responsible for damages on account of deterioration of his private line, and consequent defects therein, resulting in injury to a trespasser coming in contact with it on private premises, not adjacent to any path in general use by the public, when the private line was not only properly constructed originally, but safely connected with the line of the company generating the electricity, and there was no knowledge on the part of the company as to any subsequent deterioration of the private line.

2. Under the evidence adduced, the court did not err in awarding a non-suit.

DECIDED JULY 10, 1918.

Action for damages; from city court of Floyd county—Judge Nunnally.    March 18, 1918.

*Harris & Harris,* for plaintiff.    *Dean & Dean,* for defendant.

WADE, C. J.    John W. Scott, a boy 10 years old, brought suit by his next friend against the Rome Railway and Light Company, alleging that while picking blackberries in an open woodland, he stumbled, and in the act of falling threw up his hand and caught a wire hanging near the ground, which connected with a main wire used by the defendant for the purpose of conveying electric current which it generated, and thereby seriously and permanently injured his hand.    The undisputed evidence showed that the wire caught by the plaintiff was originally placed in position by an individual user of electricity, and was entirely constructed and maintained

by the said user, without any inspection or control whatever on the part of the defendant company, which furnished by contract the current flowing over it to supply electric lights on his premises. The superintendent of the defendant company testified in behalf of the plaintiff that his company sold electric power and "furnished the electricity" that went through the line of wire where the plaintiff was injured to the house of the individual user, who paid for the current consumed. He testified: "The company did not construct that wire from the street, from the Black's Bluff road, over to Averett premises. It was not built by the defendant company. It took no supervision over the construction of that wire, nor of the maintenance, nor of the inspection of it. It delivered the current to that line for the use of the Averett property." He further testified: "When a private party connects, places his own line, and connects with the wire, with the main line, we take no further supervision or control over his private wire. Simply deliver the current at the connecting point, and he maintains the wire, and the poles, and everything. Have nothing to do with the building or maintaining of it. That was the case in this instance, up to and at the time the boy was injured. I did not know this wire was down or wanting in insulation, up to and at the time the boy was injured." The evidence disclosed that the injury occurred not only away from the public highway, but also away from any path or road in general use by the public, and on private property on which the plaintiff was a trespasser. There is nothing to indicate even that the defendant company had any knowledge of the condition of the private line, over which it had no control, and which it neither inspected nor undertook to inspect. There was testimony that the private line was originally constructed in a proper manner, and was therefore in a safe condition when the defendant company began delivering current over it to the individual user.

We think, under the testimony, the court properly awarded a nonsuit. The following rule is laid down in The Law of Electricity, by Curtis (1915), p. 618: "There seems to be some conflict of authority on the question whether an electric company is under any duty as to the safety of appliances owned and maintained by its customer but through which it conducts its current. The weight of authority supports the view that, if the appliances of the cus-

tomer are not constructed or owned by the company generating the electricity, the company is not bound to inspect the same, and it is not liable for an injury that is received by reason of defects in such appliances, where it has no knowledge of the defect, though the electricity which causes the injury comes from its plant. Thus, if one electric company generates a current and sells it to another for street lighting or distribution to the patrons of the latter, the generating company is not liable for the escape of the current due to the negligence of the latter in insulating or otherwise protecting its appliances." · In 9 Ruling Case Law, 1204, § 15, the rule is stated as follows : "It is generally held that where the electric wires or other appliances which have caused personal injury are not owned nor controlled by the company furnishing the power it is not liable for the damage sustained. Thus where parties undertake to wire their own property, and then apply to the light company to deliver a current to light the building, they must be assumed to take all risks resulting from the character of the wire which is put in the building and the method of construction which is adopted in putting it in. In such a case, since the company is only employed to deliver the current by connection with wiring already made by the individual who owns the property, its responsibility ends when the connection is properly made under proper conditions and it delivers the current in a manner which will protect both life and property." There is nothing in the evidence in this case to suggest that the connection made with the line of the defendant company which furnished the current was not "properly made under proper conditions," or that the defendant generating the current did not deliver the same in a manner which would (so far as such delivery was concerned) "protect both life and property." "Where such power is simply furnished to a responsible party for use in a system of poles, wires, and appliances owned and controlled by such party and in proper condition to receive the current safely, the furnishing party·is not required · to maintain inspection, or to see at its peril that such equipment is kept safe, but so long as not chargeable with knowledge of some defect therein, it may assume that such safety will be maintained, and the fact that in furnishing such power for arc lighting the seller undertakes to supply and maintain the necessary lamps and carbons does not change the rule. In order to hold the seller

liable it must appear that it continued to furnish and turn on the current after knowing that the purchaser had permitted the equipment to become defective." Hoffman v. Leavenworth Light &c. Power Co., 91 Kan. 450 (138 Pac. 632, 50 L. R. A. (N. S.) 574). See also various cases referred to in the opinion in that case. Likewise see Fickeisen v. Wheeling Electrical Co., 67 W. Va. 335 (67 S. E. 788, 27 L. R. A. (N. S.) 893). "While there are cases which hold that a company which turns a powerful current on private wires strung along the highway is bound to inspect them from time to time to see that they are securely fastened and properly insulated, although they do not belong to it" (9 R. C. L. 1204), the injury in this case did not occur on the highway or on account of any defect in the line of wire traversing the highway, but occurred away from it and because of a defect (not original) in the private line only.

> *Judgment affirmed. Jenkins and Luke, JJ., concur.*