(101 So. 898)

### ALABAMA POWER CO. v. JONES.
#### (7 Div. 438.)

(Supreme Court of Alabama. Oct. 30, 1924. Rehearing Denied Nov. 27, 1924.)

1. **Electricity** ⬸14(2)—**Knowingly maintaining wire four feet above vacant lot used by public held negligence.**

Maintaining partly uninsulated high tension, with knowledge of its condition, electric wire four feet above vacant lot used by public is negligence.

2. **Electricity** ⬸16(5)—**Supplier of electricity, with knowledge of defects in customer's wires, liable.**

One continuing to supply electricity to customer, with knowledge of defects in customer's appliances, is liable for consequences of such defective and dangerous appliances.

3. **Electricity** ⬸19(10)—**Whether power company's employé had notice of defective wire of customer held jury question.**

In action against power company for death from electricity, where witness testified to notifying some one at defendant's storeroom by telephone of dangerous condition of wire of customer, whether person warned was in employ of defendant as lineman and answering on its behalf, so as to charge defendant with notice of condition of wire, was jury question.

4. **Evidence** ⬸148—**Testimony as to telephone notice to power company of dangerous condition of electric wire held admissible.**

In action for death from electricity, testimony that witness by telephone notified some one at defendant power company's storeroom of dangerous condition of wire was admissible.

5. **Electricity** ⬸19(10)—**Knowledge of dangerous condition of wire held jury question.**

In action for death from electricity, testimony that witness by telephone notified some one at defendant power company's storeroom of defective condition of wire, and evidence as to manner of conducting storeroom *held* sufficient for submission to jury of question of defendant's knowledge of condition of wire, and danger to public.

6. **Electricity** ⬸19(10)—**Evidence held sufficient for jury as to ownership of premises, conditions, and knowledge thereof.**

In action for death from electricity, evidence *held* sufficient for jury to find that place where death occurred was, to defendant's knowledge, uninclosed lot, not property of, or under control of, defendant power company, and place frequented by public where persons were likely to be at any hour of the day.

7. **Appeal and error** ⬸1050(2) — **Admitting testimony as to condition of entire length of wire causing death, ownership of which was in dispute, not reversible error.**

In action for death from electricity, defended on ground that wire causing death belonged to customer to whom defendant supplied electricity, admitting testimony as to its condition its entire length, was not reversible error,

---

⬸For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

it not being contested that it was in bad condition, controverted question being responsibility therefor.

**8. Electricity ☞19(4)—Admitting testimony deceased was going nearest route to destination not improper.**

In action for death from electricity, where deceased was killed while on vacant uninclosed lot, admitting proof that way he was going was direct and nearest route to his destination, was not improper.

**9. Electricity ☞19(4)—On issue as to ownership and control of wire, admitting deeds was not error.**

In action for death from electricity, on issue as to ownership, possession, and control of line, admitting deed, showing what was conveyed to defendant upon purchase of certain properties, was not error.

**10. Evidence ☞473—Question whether place was one that people frequented held not to call for expression of opinion.**

In action for death from electricity by coming into contact with wire on vacant uninclosed lot, question to witness whether lot was place that people frequented was not objectionable as calling for expression of opinion; it calling for collective fact.

**11. Witnesses ☞252—Permitting use of diagram, by way of illustration in questioning witness, held not prejudicial.**

In action for death from electricity, permitting witness, familiar with place and surroundings where death occurred, to be asked question illustrated by pointing to diagram of locality, was not prejudicial, although diagram had not been offered in evidence.

Appeal from Circuit Court, Etowah County; Woodson J. Martin, Judge.

·Action for damages for wrongful death by Langdon Jones, as administrator of the estate of Ralph Jones, deceased, against the Alabama Power Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Count 11 of the complaint avers that:

"On or about the 30th day of December, 1922, the defendant corporation was engaged in the business of transmitting and maintaining over certain wires a current of electricity of 2,300 volts, or practically the same, from its substation in or near Gadsden, Etowah county, Ala., to a point on Lookout Mountain, known as the old Bellevue Hotel site, a public common or uninclosed lot not the property of the defendant or under its control, and which was a place where the common public frequented in great numbers, and where persons were likely to be at any hour of the day, facts known to the defendant, or to its servants and agents in charge of the business of transmitting said electricity and maintaining said current of the same to said place, and plaintiff avers that on said date it was known to defendant, or to its said servants and agents so engaged for defendant, and acting within the scope and line of their .duties of service to the

defendant, that certain wires at said place and then and there being used in the transmission and maintenance of said current of electricity were sagging within 3 to 5 feet of the ground, and were improperly insulated, and that persons at said place would very likely come in contact therewith and receive said current of electricity, and be injured or killed thereby.

."And plaintiff avers further that at said time and place his said intestate, the said Ralph Jones, while on said common, or while in the act of passing from said common into a road or way used by the public, came into contact with said wires and received said current of electricity which the said defendant or its said agents were transmitting and maintaining, and was proximately killed thereby.

"And plaintiff avers that his said intestate was so killed as the proximate consequence of the negligence of the defendant or its said servants and agents in this: Defendant, or its said servants and agents, with knowledge as aforesaid, negligently maintained said current of electricity in said wires when the same were so sagging and improperly insulated, to plaintiff's full damage as aforesaid."

Hood & Murphree, of Gadsden, and Martin, Thompson, Foster & Turner, of Birmingham, for appellant.

Admitting the diagram in evidence and permitting plaintiff's counsel to examine the witness Ramsey with reference thereto was error. Stein v. Ashby, 24 Ala. 521; 22 C. J. 912. The question whether the place in question was one that people frequented called for a conclusion. Sheffield Co. v. Morton, 161 Ala. 153, 49 So. 772. The 'condition of the line in question, except at the time and place where intestate met his death, was irrelevant. L. & N. v. Miller, 109 Ala. 500, 19 So. 989. Evidence of McCullough's conversation over the telephone with some person in the office of defendant was erroneously admitted. Vaughn v. State, 130 Ala. 18, 30 So. 669. The deeds or conveyances offered by plaintiff were irrelevant to any issue in the case. Clements v. Hays, 76 Ala. 280; Ala. State Land Co. v. Matthews, 168 Ala. 200, 53 So. 174; Buck v. L. & N., 159 Ala. 305, 48 So. 699; Kennington v. Williams, 30 Ala. 161. Notice or knowledge of the agent is not notice to or knowledge of the principal, unless with respect to a matter which the agent is employed to transact. Ala. W. R. Co. v. Bush, 182 Ala. 113, 62 So. 89; C. G. R. Co. v. Joseph, 125 Ala. 313, 28 So. 35; Birmingham Co. v. La. Nat. Bank, 99 Ala. 379, 13 So. 112, 20 L. R. A. 600; Bank of Florala v. Am. Nat. Bank, 199 Ala. 659, 75 So. 310. A generating company, which merely furnishes the electric current, is not responsible for the insulation or condition of the wires and appliances of the distributing company, and is not liable for injuries caused by their defective condition. 20 C. J. 364; Fickeisen v. Wheeling Elec. Co., 67 W. Va. 335, 67 S. E. 788, 27 L. R. A. (N. S.)

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

893; Perry v. Ohio Valley Elec. Co., 70 W. Va. 697, 74 S. E. 993; Pressley v. B. & N. Ry. & L. Co., 271 Ill. 622, 111 N. E. 511; Hoffman v. Leavenworth L. Co., 91 Kan. 450, 138 P. 632, 50 L. R. A. (N. S.) 574; Hill v. Pacific G. & E. Co., 22 Cal. App. 788, 136 P. 492; Scott v. Rome R. & L. Co., 22 Ga. App. 474, 96 S. E. 569; Devost v. Twin Cities Co., 79 N. H. 411, 109 A. 839; McFerran v. Merchants Co. (Ind. App.) 131 N. E. 544; Byrd v. Pine Bluff Corp., 102 Ark. 631, 145 S. W. 562; Keefe v. Narragansett E. Co., 21 R. I. 575, 43 A. 542; Memphis C. G. & E. Co. v. Speers, 113 Tenn. 83, 81 S. W. 595; Nat. F. I. Co. v. Denver C. E. Co., 16 Colo. App. 86, 63 P. 949; Minneapolis G. E. Co. v. Cronon, 166 F. 651, 92 C. C. A. 345, 20 L. R. A. (N. S.) 816; Caldwell v. Alley, 70 Ind. App. 313, 123 N. E. 432; Princeton L. & P. Co. v. Ballard, 59 Ind. App. 345, 109 N. E. 405; Shaw v. N. C. P. S. Co., 168 N. C. 611, 84 S. E. 1010; Smith v. Lexington, 176 N. C. 466, 97 S. E. 378.

E. O. McCord & Son, of Gadsden, for appellee.

Evidence of the telephone conversation was admissible. Ala. Livery Co. v. Hairston, 17 Ala. App. 17, 81 So. 353; Monarch Livery Co. v. Luck, 184 Ala. 518, 63 So. 656; Temple Elec. Co. v. Halliburton (Tex. Civ. App.) 136 S. W. 584; B. R., L. & P. Co. v. Murphy, 2 Ala. App. 588, 56 So. 817; Hoffman v. Leavenworth Co., 91 Kan. 450, 138 P. 632, 50 L. R. A. (N. S.) 574. Liability of the defendant was a question for the jury. Fiquett v. Wade E. L. & P. Co., 206 Ala. 630, 91 So. 357; 20 C. J. 365; Pressley v. Bloomington, etc., Co., 271 Ill. 622, 111 N. E. 511; Curtis on Elec., § 417; San Antonio Co. v. Ocon, 105 Tex. 139, 146 S. W. 162, 39 L. R. A. (N. S.) 1046.

GARDNER, J. This action is by appellee as administrator of the estate of Ralph Jones, deceased, to recover damages for the death of plaintiff's intestate, alleged to have been the result of the wrongful conduct of the defendant. From a judgment in favor of the plaintiff, the defendant has prosecuted this appeal.

The question of prime importance, as treated in the oral argument, and also in brief of counsel, relates to the action of the court below in the refusal of the affirmative charge requested by the defendant. Count 11 was the only count upon which plaintiff's case was submitted to the jury, and counsel for defendant insist plaintiff failed to establish the material averments thereof.

A brief reference to the essential features of the evidence is necessary. Plaintiff's intestate was a boy approximately 16 years of age, and had come for a visit to his sister who resided near Gadsden, Ala., on Lookout Mountain, in what is referred to as Bellevue Highlands. On Bellevue Highlands there was an old hotel site, where at one time stood the Bellevue Hotel, long since destroyed. This hotel site is about a mile and a quarter from the city of Gadsden, and elevated about 700 feet. It was uninclosed, but on the south side there was a circular rock wall from about ½ to 2 feet wide, and about 3 or 4 feet in height. The hotel grounds sloped upward from the rock wall in the form of a terrace. Just south of this wall and in a few feet thereof was the road, known as the Bellevue Drive, and south of this road was the bluff of the mountain. There were steps leading down this bluff to the city. The road extended along between the foot of the bluff and the wall. The sister of plaintiff's intestate lived a few steps from the hotel site. On the morning of his death her brother, plaintiff's intestate, left her house on his way to Gadsden. He was walking, and the way led across the hotel site. About two hours afterward his dead body was found hanging over the rock wall, which, according to one witness, was at this place about 6 feet from the road above referred to, with his neck across an electric wire, and his left hand on the wire. This wire partially extended over the hotel site and also over the road known as Bellevue Drive.

[1, 2] The witness Ramsey, who seems to have first discovered the body, stated that "the wire the boy was on was about four feet above the road." This roadway had been used by the public for a long number of years, and there was evidence tending to show a number of people visited and passed this place, and that the wire had been down in this condition for several weeks. This wire was uninsulated, or partly so at least, and it is without dispute that there was transmitted over this wire 2,300 volts of electricity generated by the defendant company. This wire extended across the road to a nearby pole, where was attached a transformer, and the current cut down and distributed to consumers on the mountain. One Hart owned and operated a street railway, which ran up this mountain, and near this latter pole was a car shed, where passengers alighted and were taken on the cars. The wire in question ran from the pole near this car shed in a northwesterly direction, toward what is referred to as the Appleton place, then in a southwesterly direction down the mountain side, to a point at Gadsden, about 100 feet east of Twelfth street, and 100 feet north of the Southern Railway to a pole on which had been installed a meter to measure the current of electricity as it passed through said wire up the mountain. There were installed on this pole what are known as cut-out plugs, which, when pulled out of their sockets, disconnected the current. That this wire, in the condition outlined above, was a source of danger to the public, and that so remaining constituted negligence,

is not, as we read the briefs of counsel, seriously questioned (Dwight Mfg. Co. v. Word, 200 Ala. 221, 75 So. 979) ; but counsel for appellant insist the responsibility therefor is not chargeable to it, for the reason that at this latter point, at Gadsden, the defendant company sold and delivered its current to Hart, and that the wires in question belonged to Hart or Hart's company, and were in his possession, custody, and control, and therefore the defendant was not responsible therefor.

The principle of law which defendant seeks to here invoke, established by the great weight of authority, is thus expressed in 20 Corpus Juris, 364:

"Where wiring or other electrical appliances on private premises are owned and controlled by the owner or occupant of such premises, a company which merely furnishes electricity is not responsible for the insulation or condition of such wiring or appliances, and is not liable for injuries caused by their defective condition, to such owner or occupant, or to third persons on such premises. A like rule has been applied to poles and wires of a distributing company to which a generating company sells and delivers electricity for distribution and sale to the patrons of the distributing company. The duty and responsibility of a mere generating company is limited to making a proper connection and delivering the electric current to the purchaser's wire and appliances in a manner which, so far as such delivery is concerned, protects life and property, and there is no duty of inspection to see that the purchaser's wires and appliances are in a safe condition, and kept so."

Among the cases cited by counsel for appellant in support of this insistence, may be noted the following: Fickeisen v. Wheeling Electrical Co., 67 W. Va. 335, 67 S. E. 788, 27 L. R. A. (N. S.) 893; Pressley v. Bloomington & Normal Ry., etc., Co., 271 Ill. 622, 111 N. E. 511; Hoffman v. Leavenworth Light Co., 91 Kan. 450, 138 P. 632, 50 L. R. A. (N. S.) 574; Hill v. Pac. Gas Co., 22 Cal. App. 788, 136 P. 492.

Opposing counsel, however, insist there is evidence tending to show the ownership, possession, and control of this wire by the defendant at the time, and that this was therefore a question for the jury's determination; or, if not so owned by it, there was evidence from which the jury could infer the defendant was in possession and control of the wire, and appropriating the same for the purpose of furnishing current within the principle recognized in Fiquett v. Wade Electric Lt. & P. Co., 206 Ala. 630, 91 So. 357. Counsel for plaintiff, however, also rely upon the principle equally well recognized that, whether the defendant owned or controlled the wire or not, if it had notice of its dangerous condition, and continued to supply the current with knowledge that life and limb might be imperiled by reason of such defect, it would be charged with responsibility for

the consequences thereof. In 20 Corpus Juris, 365, this rule of law is expressed as follows:

"Whatever the rule may be in this regard, knowledge of the defective and dangerous condition of a customer's appliances will charge even a mere guarantor and supplier of electricity with liability for consequences, where current is thereafter supplied to such defective and dangerous appliances."

In the case of Hoffman v. Leavenworth Light Co., 91 Kan. 450, 138 P. 632, 50 L. R. A. (N. S.) 574 (referred to as the leading case discussing this question), the court said:

"The furnishing of electric current to distant places is a necessity of modern civic and industrial life, but it is in strict line with the dictates alike of law, morals, and humanitarianism that one who generates and sells this dangerous agency should use proper care to avoid resulting harm. When such power is simply furnished to a responsible party for use in a system of poles, wires, and appliances owned and controlled by such party, and in proper condition to receive the current safely, the furnishing party is not required to maintain inspection, or to see at its peril that such equipment is kept safe, but, so long as not chargeable with knowledge of defect therein, it may justly and reasonably assume that such safety will be maintained; justly and reasonably, because the using company is presumed to act in accordance with prudence and safety until the contrary appears. The fact that in furnishing such power for arclighting the seller undertakes to supply and maintain the necessary lamps and carbons does not change the rule, for such party has the same right as before to assume that the purchaser will act with due care. In order, therefore, to hold the seller liable, it must appear that it continued to furnish and turn on the dangerous current after knowing that the purchaser had permitted the equipment to become defective. From the time of acquiring such knowledge, the seller's contract duty cannot be required, save on condition that such defect be remedied, for otherwise it must thenceforward furnish a dangerous force, knowing that life and limb might be imperiled by reason of such defect, which neither a contract nor the law nor the common instincts of humanity could require of any one."

This authority has often been cited with approval, and the principle therein stated given recognition in subsequent cases, among them: Gas Company v. Walsh (Tex. Civ. App.) 257 S. W. 291; Devost v. Twin State Gas Co., 79 N. H. 411, 109 A. 839; Smith's Adm'r v. Middlesboro Electric Co., 164 Ky. 46, 174 S. W. 773, Ann. Cas. 1917A, 1164; International Electric Co. v. Sanchez (Tex. Civ. App.) 203 S. W. 1164; Scott v. Rome Ry. & Lt. Co., 22 Ga. App. 474, 96 S. E. 569; Pressley v. Bloomington & Normal Ry. Co., 271 Ill. 622, 111 N. E. 511. See, also, in this connection, though not analogous cases, Montgomery Lt. & W. P. Co. v. Thombs, 204 Ala. 678, 87 So. 205; B. R., L. & P. Co. v.

212 ALA.—14

Cockrum, 179 Ala. 372, 60 So. 304; Sheffield Co. v. Morton, 161 Ala. 156, 49 So. 772; Fiquett v. Wade Electric Co., supra. The holding of the foregoing authorities seems to be sustained by a uniformity of the decisions as well as sound reasoning, and in fact is not controverted by counsel for appellant.

[3-5] As an answer thereto, counsel rely upon the insistence that notice to defendant of such condition of the wires was not shown by legal and competent evidence. There was evidence tending to show that from January, 1920, to May, 1921, the defendant company did actually use and operate these wires while serving consumers on the mountain, and that they were uninsulated and otherwise in bad condition at this time, and had been sagging several weeks before the accident; that the place was one where people came both day and night; that people lived in this neighborhood, passed there going to and from their work in Gadsden, and visited this place for picnic purposes and to view the scenery. The car shed of defendant is located nearby, and there was also maintained a pavilion on the mountain. And it was insisted the jury could infer knowledge of this dangerous condition.

But plaintiff's case did not rest upon this proof to establish the averment of such knowledge. One McCullough testified that, a few days before this accident, he was near this particular spot while working for the telephone company, and noticed the dangerous condition of these wires, that he knew where the office of defendant was located where one reports wires needing repair; it was at the storeroom on Gardner street, near the defendant's car barn. The storeroom is where defendant's linemen stay, that he telephoned defendant's storeroom and "told them that the wires were down up there, it was just about high enough for somebody to walk into." McCullough further testified that the man who answered the telephone replied: "Well; we will get somebody out on that." It appears from other evidence that defendant's substation is at the car barn, and that this current was actually sent out from this substation, and the storeroom where the linemen stay is near the car barn, about 100 feet, and connected therewith by telephone. The storeroom was not open to the public, and ordinarily only linemen were accustomed to go there. Quite a number of defendant's employés were about there during the day, in and out from time to time. "Any one who happened to be there was required to answer the telephone there during the day." When the linemen are not working on the lines they report to this storeroom for orders, and this is also headquarters for the superintendent, and the general line foreman, when not on the lines, comes to that office or storeroom. The telephone there was connected with the general office of the defendant in Gadsden. Under the circumstances herein stated, the jury could infer that the person answering the telephone, and with whom the conversation was had, was one in the employ of the defendant company as lineman, and answering on its behalf. Whether so or not was a jury question. We are of the opinion that under the cases of Western U. Tel. Co. v. Rowell, 153 Ala. 295, 45 So. 73, and Monarch Livery Co. v. Luck, 184 Ala. 518, 63 So. 656, this evidence was admissible. We are of the opinion this evidence was sufficient for submission to the jury of the question as to defendant's knowledge of the condition of these wires and consequent danger to the public.

True, the general office for the transaction of business of defendant was "down town" in Gadsden, but from the evidence above referred to the jury could infer that actual notice of this condition was given to defendant's very center of operations, so far as actual operation and maintenance was concerned. The district manager, who stayed at the general office, stated that the current is normally on all the time, and that when necessary he directed it to be taken off; but he further testified that "in an emergency it could be ordered off by other persons." It therefore appears that McCullough's message went to the headquarters of the superintendent of the defendant's lines as well also as the general line foreman, and at the office where the linemen stay when not actually out on the lines; that this office is within 100 feet of the car barn where is situated the substation from which the current is sent out over this line, all of which is connected by telephone, and also connected with the general or business office at Fifth and Chestnut streets. The district manager had the current "killed at the substation out * * * at the barn" immediately upon receiving information as to the accident, and from this evidence it appears that ordinarily the current is cut off only upon his command; but it further appears, as indeed must of necessity be the case, that in an emergency others in defendant's employ also could so order the current cut off. We think very clearly the jury could infer from the proof that those in the office where the information was received could and should have immediately reported and had the current cut off until the dangerous condition was remedied. B. R. L. & P. Co. v. Murphy, 2 Ala. App. 588, 56 So. 817.

The 2,300-volt current of electricity was under the direct control of the defendant, to be cut off upon the lifting of a lever. Nothing interfered with this control between the substation and the point where plaintiff's intestate met his death, and even conceding, for the present purposes only, that the cur-

rent was sold and delivered to Hart at the pole in Gadsden, 100 feet east of Twelfth street, where was placed a meter, yet the current was still under defendant's control, and was being transmitted and maintained by defendant over the wire, within the meaning of the language of the complaint. The transmission of this dangerous current over this wire, after knowledge of the condition of the wires, and dangers to the public in consequence thereof, brings the case within the influence of the principle recognized in Hoffman v. Leavenworth Light Co., supra, whether Hart or defendant owned and was in possession of this wire.

[6] We think the proof sufficient for the jury to find that the averment of count 11 has been sustained, to the effect that the old hotel site was an uninclosed lot, not the property or under the control of defendant, and a place where the common public frequented, and where persons were likely to be at any hour of the day.

A further discussion of the evidence in this regard is unnecessary. Suffice it to say it has been carefully examined by the court. The defendant had customers on this mountain, the transformer for the distribution of the current being located on the pole just beyond where plaintiff's intestate was found, and the customers were so served by defendant from the time of its acquisition of the Gadsden properties, until May, 1921, and prior to this accident the district manager had been upon this mountain at this place, and, in addition to all this, is the actual knowledge given by McCullough, to which we have before referred.

From all the evidence in the case, therefore, the jury could infer that the character of place was known to the defendant, or its agents or servants, and that this averment of the complaint (count 11) had likewise been established. We are of the opinion that, without regard to the insistence that the evidence presented a disputed issue of fact as to the ownership, possession, and control of this particular wire, the affirmative charge requested by defendant was properly refused, under the principle of the Hoffman Case, supra.

[7] Much evidence was offered upon the question of the ownership, possession, and control of this wire leading from the pole in Gadsden, 100 feet east of Twelfth street, up the mountain, and no reversible error was committed by the court in permitting the witness to testify to its condition its entire length. Moreover, that the wire was in bad condition did not constitute a seriously controverted fact in the case, the important and controlling inquiry relating to the responsibility therefor.

[8] Nor was there reversible error in admitting the proof that the way plaintiff's intestate was going was the direct and nearest way to Gadsden, his destination. The rock where plaintiff's intestate was found was only a few feet in height. Proof had been offered to the effect that children had only a few days previously played with this wire, and one had experienced a shock in so doing, as well as of proof that people visited this hotel site for picnics, to view the scenery, and a number of people lived in that vicinity, going to and from their work in Gadsden. Though the evidence admitted may not have been essential to plaintiff's case, yet we think its admission was clearly not improper.

[9] In view of the issue as to ownership, possession, and control of this particular line, there was no error in admitting the deeds, showing what was in fact conveyed to the defendant upon the purchase of the Gadsden properties. We have previously expressed our view that the evidence of McCullough as to the telephone conversation was admissible, and this assignment of error needs no further reference.

[10] There was no error in overruling the defendant's objection to the question asked plaintiff's witness in reference to the hotel site, whether or not it was a place that people frequented. This called for a collective fact, and not the mere expression of opinion of the witness.

[11] One Alfred Ramsey, witness for the plaintiff, had first discovered the body of plaintiff's intestate. He lived on the mountain, and was familiar with the hotel site and all the surroundings. After having testified in detail as to this site and the location of the body, the witness was exhibited a diagram of the location, and asked a question pointing to the diagram by way of illustration. The use of the diagram was objected to, and the objection overruled. The diagram had not been offered in evidence, and the plaintiff was merely proceeding to ask the witness, who knew, and was familiar with, the location in reference to the diagram. The authorities cited (22 Corpus Juris, pp. 910–912; Stein v. Ashby, 24 Ala. 521) do not militate against the conclusion that the court committed no error in this regard. Moreover, no question whatever is presented as to the entire correctness of the diagram, and in no event could injury have resulted from its admission.

The action of the court in overruling the motion for new trial is based upon the ground that the verdict was contrary to the great weight of the evidence, and needs no discussion. Very clearly, no case is here presented calling for a disturbance of the ruling of the court below on this motion.

We have here given consideration to the several assignments of error insisted upon in brief of counsel for appellant, and we find

nothing in any of the rulings of the lower court calling for a reversal of the cause.

The judgment will accordingly be here affirmed.

Affirmed.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.