159 So. 695

**JOHNSON v. ALABAMA POWER CO.**

**7 Div. 302.**

Supreme Court of Alabama.

Feb. 28, 1935.

E. L. Roberts, of Gadsden, Merrill, Jones & Whiteside, of Anniston, and McCord & McCord, of Gadsden, for appellant.

Knox, Acker, Sterne & Liles, of Anniston, and Martin, Turner & McWhorter, of Birmingham, for appellee.

KNIGHT, Justice.

Appellant's intestate was killed by coming in contact with a broken wire charged with a current of electricity of high and dangerous voltage. The electricity was generated and supplied by the appellee to the city of Piedmont, which owned and operated a system for distributing the current, bought of appellee, to the inhabitants of the city and for lighting the city.

The court below sustained demurrers to the several counts of the complaint, and, on account of the adverse ruling, the plaintiff took nonsuit, and appeals. The sole question presented here for review arises upon the sufficiency of the several counts, or of either of them, to state a cause of action against the defendant, the generator or seller of the electricity to the city. Confessedly, under the averments of the pleading, the defendant had no ownership in, control or management of, the equipment or facilities used or employed for the distribution of the electricity after it left the defendant's substation and entered the distribution system of the city.

The death of plaintiff's intestate is ascribed to the defective condition of one of the city's conduit wires.

The plaintiff's intestate, a city letter carrier, while engaged in his duties as such letter carrier, and while traveling along or across Second avenue of the city of Piedmont, came into contact with a live wire, which, on account of its defective condition had broken, and fallen "along side or across" said avenue.

This court has had occasion to consider the liability of the generator of electricity, which it sells and supplies to others, for distribution over wires of the purchasers, and over which wires the generating company has no control or supervision.

In the case of Alabama Power Co. v. Jones, 212 Ala. 206, 101 So. 898, 900, this court cited with approval the following statement of the law from the case of Hoffman v. Leavenworth Light, Heat & Power Co., 91 Kan. 450, 138 P. 632, 50 L. R. A. (N. S.) 574: "The furnishing of electric current to distant places is a necessity of modern civic and industrial life, but it is in strict line with the dictates alike of law, morals, and humanitarianism that one who generates and sells this dangerous agency should use proper care to avoid resulting harm. When such power is simply furnished to a responsible party for use in a system of poles, wires, and appliances owned and controlled by such party, and in proper condition to receive the current safely, the furnishing party is not required to maintain inspection, or to see at its peril that such equipment is kept safe, but, so long as not chargeable with knowledge of defect therein, it may justly and reasonably assume that such safety will be maintained; justly and reasonably, because the using company is presumed to act in accordance with prudence and safety until the contrary appears. The fact that in furnishing such power for arclighting the seller undertakes to supply and maintain the necessary lamps and carbons does not change the rule, for such party has the same right as before to assume that the purchaser will act with due care. In order, therefore, to hold the seller liable, it must appear that it continued to furnish and turn on the dangerous current after knowing that the purchaser had permitted the equipment to become defective. From the time of acquiring such knowledge, the seller's contract duty cannot be required, save on condition that such defect be remedied, for otherwise it must thenceforward furnish a dangerous force, knowing that life and limb might be imperiled by reason of such defect, which neither a contract nor the law nor the common instincts of humanity could require of any one."

In 20 Corpus Juris, page 365, it is stated as a general principle of law in such case: "Whatever the rule may be in this regard,

knowledge of the defective and dangerous condition of a customer's appliances will charge even a mere *guarantor* and supplier of electricity with liability for consequences, where current is thereafter supplied to such defective and dangerous appliances."

■ The rule declared in the Hoffman Case, supra, has received the approval of this court, and is now the law on the subject in this jurisdiction.

In order, therefore, to make the generator of the electricity liable it must be averred, and proved, that it continued to furnish the dangerous current after *knowledge that the purchaser had permitted the electrical equipment to* become defective, and therefore dangerous to life and property. Whenever such condition exists, and the seller has notice or knowledge of it, it becomes his duty to cut off service from the purchaser. We so held in the case of Alabama Power Co. v. Sides, 229 Ala. 84, 155 So. 686.

■■ It is alleged in count one of the complaint, omitting averments not presently necessary to be stated: "And plaintiff avers that on said date; and for sometime prior thereto, said wires and distribution system in said City of Piedmont *as a whole* were in a very run down and dangerous and defective condition; that said wires along which defendant transmitted and maintained said electric current were old and the insulation from the same had practically rotted off, and said wires were sagging and were strung through trees and on defective poles, and were otherwise in such a dangerous and defective condition that said wires *throughout said system* were likely at any time to break, or to fall to the ground along the public streets, sidewalks and highways of said City of Piedmont, and become dangerous to the life of any and all persons traveling said streets and highways. That the defendant company, or its servants and agents, while acting within the scope and line of their duties of service to the defendant in and about the transmitting and maintaining of said current of electricity over said wires or said distribution system, *had notice of the defective and dangerous condition as* hereinabove averred."

The count then proceeds: "And plaintiff avers that her said intestate was killed as a proximate consequence of the negligence of the defendant, or its servants and agents, while acting within the line and scope of their authority, *with notice*, as aforesaid, of the dangerous and defective condition of said wires, in negligently maintaining said current of high and dangerous voltage in said wires, when the same were so defective and so improperly insulated as to be likely to cause injury to any one, as aforesaid."

It is insisted by the appellee that the count does not sufficiently allege and charge notice to the defendant of the particular defective wire. Appellant takes the position, in effect, that count one charges that the defendant became aware of the *generally defective and dangerous condition* of the system of distribution *as a whole*, and that, therefore, it became thereby aware *"of every part and line* (of the system), *because the whole is made up of its parts and if all the parts are defective and dangerous then knowledge goes through knowledge of the whole to all and each of its parts."*

The appellant and appellee each seem to rely upon the cases of Alabama Power Co. v. Jones, supra, Hoffman v. Leavenworth Light, Heat & Power Co., supra, and Fiquett v. Wade Electric Lt. & Power Co., 206 Ala. 630, 91 So. 357, as authorities supporting their respective contentions.

As we read and construe count one, it charges that the whole (entire) system of distribution maintained by the city of Piedmont was in a run down, defective, and dangerous condition, and that the defendant knew of such condition, but nevertheless, with this knowledge, continued to send its dangerous current of electricity over the distribution wires of the city. Of course, if the whole system was in a dangerous condition, this included all of the several parts or lines of the system. The pleader has, as a matter of fact, assumed the burden by this count of showing, not that a part of the system was in a dangerous and defective condition, but that the whole system, *including the particular offending wire*, was in a defective and dangerous condition, and that the defendant knew of such condition, not in part, but knew that the system as a whole, which includes all its parts, was defective and dangerous. Nothing short of proof to that effect would satisfy the averment.

The appellant, in brief, asks this question: "Does this count tie the pleader down to showing that the defendant, or its servants and agents had actual knowledge of the peculiar defect of this particular wire at the point at which it broke in order to fasten liability on the defendant?" The answer may be found in the averments of the count. She must show, as the count is framed, and as we construe it to mean, that all the wires were defective, including the offending wire, and that defendant had knowledge of the same.

Construing count one to charge that the entire distribution system, including the offending wire, was in a defective and dangerous condition, and that defendant had knowledge of this condition, we hold count one sufficient to state a case of liability against the defendant. Alabama Power Co. v. Jones, supra; Hoffman et al. v. Leavenworth Light, Heat & Power Co., 91 Kan. 450, 138 P. 632, 50 L. R. A. (N. S.) 574; 20 Corpus Juris, pp. 364, 365; Amarillo Gas Co. v. Walsh (Tex. Civ. App.) 257 S. W. 291; Devost v. Twin State Gas & Electric Co., 79 N. H. 411, 109 A. 839.

Count two of the complaint, like count one, charges that the distribution system maintained by the city of Piedmont was as a whole in a "very run down and dangerous and defective condition; that said wires along which defendant transmitted and maintained said electric current were old and the insulation from same had practically rotted off, and said wires were sagging and were strung through trees and were otherwise in a dangerous and defective condition." That the company "had notice of the defective and dangerous condition as hereinabove described."

Construing this count, just as we construed count one, to mean that the whole system of distribution, and not simply a part of it, was in a defective and dangerous condition, we think it sufficient and not subject to defendant's demurrer.

 Count three was defective. The fact that the current was furnished the city of Piedmont under a contract with the city does not alter the situation, as it is not averred that by the terms of the contract any duty to inspect or to keep in repair the system was imposed on the defendant, the seller of the current.

The principle applicable to such a situation is thus stated in 20 Corpus Juris, at page 364: "Where wiring or other electrical appliances on private premises are owned and controlled by the owner or occupant of such premises, a company which merely furnishes electricity is not responsible for the insulation or condition of such wiring or appliances, and is not liable for injuries caused by their defective condition, to such owner or occupant, or to third persons on such premises. A like rule has been applied to poles and wires of a distributing company to which a generating company sells and delivers electricity for distribution and sale to the patrons of the distributing company. The duty and responsibility of a mere generating company is limited to making a proper connection and delivering the electric current to the purchaser's wire and appliances in a manner which, so far as such delivery is concerned, protects life and property, and there is *no duty of inspection to see that the purchaser's wires and appliances are in safe condition, and kept so.*" (Italics supplied.)

The above rule seems to have the support of many respectable authorities. See note to the text.

However, as pointed out in our own case of Alabama Power Co. v. Jones, supra, the rule is subject to the qualification that, when the generating company has knowledge that the wires of the purchasing company are defective, and that it will endanger life or property to continue to send the current through the same, it is the duty of the generating company to discontinue the service until proper repairs are made. Alabama Power Co. v. Sides, supra.

Until notice is brought home to the generating company that the distribution system of its customer is out of repair, so as to endanger life or property, the company has the right, reasonably and justly so, to assume that the purchasing company will maintain proper equipment to receive and distribute the current. Hoffman v. Leavenworth Light, Heat & Power Co., supra.

The assumption of count three that the defendant, generating company, was "chargeable with notice of said defective and dangerous condition," because of its contract with the customer, but which does not by its terms require inspection and supervision of its customer's distribution system, finds no support in any of the adjudged cases that we have been able to find, and the appellant has not pointed us to any such case. Count three was subject to defendant's well-directed demurrer, and the court did not err in sustaining the same.

Upon the same reasoning which has led us to hold counts one and two sufficient, we hold counts four and five sufficient. The court erred in sustaining the demurrer to said counts.

It follows that the judgment of the court below must be reversed and the cause remanded for further proceedings in conformity to this opinion.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.