191 So. 379
**ALABAMA POWER CO. v. HENSON.**

**6 Div. 528.**

Supreme Court of Alabama.

Oct. 5, 1939.

Arthur Fite, of Jasper, and Martin,. Turner & McWhorter and J. C. Blakey, all of Birmingham, for appellant.

350

Pennington & Tweedy, of Jasper, for appellee.

BOULDIN, Justice.

Appellee, James W. Henson, sued appellant, Alabama Power Company, claiming damages for wrongful discontinuance of electric light service to plaintiff's residence.

Appellant, on this appeal, presents for review an adverse ruling on demurrer to the complaint, containing one count, the averments whereof, so far as pertinent to this ruling, were these: " 'the- defendant was engaged in furnishing electric lights for residences in, near and around the city of Cordova, Walker County, Alabama. * * * that for a valuable consideration to be paid to the defendant, the said defendant was furnishing an electric current for electric lights * * * for the plaintiff's residence in the said city of Cordova, Alabama; that * * * without any just cause or legal excuse the defendant * * * wrongfully caused said lights in plaintiff's residence in said town to be cut off, or wrongfully caused the said electric current which supplied the said lights * * * to be cut off.' "

In such action the complaint must disclose a legal obligation to render electric service to plaintiff. This may appear by averments disclosing the defendant is a public utility under duty to the public to render such service at the time and place, and that plaintiff is one of the public entitled to such service at the time; or by averments disclosing a contractual obligation to the plaintiff.

Where reliance is had upon a duty to the public, the general rule is the complaint should aver the defendant is engaged in such public service. Birmingham Ry., Light & Power Co. v. Littleton, 201 Ala. 141, 77 So. 565; Arnold v. Alabama Power Co., 206 Ala. 506, 90 So. 909.

■ That the Alabama Power Company is a public utility engaged in furnishing electric light and power service to residents of cities and towns in Alabama is now a matter of common knowledge, of which Alabama courts may take judicial notice. All the elements of general knowledge and certainty upon which the rule of judicial knowledge is based obtains as to Alabama Power Company after the passage of years of such well known service. 20 Am.Jur. pp. 48, 49, §§ 17, 18; Sovereign Camp, W. O. W., v. Allen, 206 Ala. 41, 89 So. 58; Byrd et al. v. State ex rel. Colquett, 212 Ala. 266, 102 So. 223.

■ The Arnold case, supra, was decided in 1921. No question of judicial notice was there discussed. Whether the public service status of Alabama Power Company was then a matter of common knowledge we need not inquire. We are dealing with common knowledge as of 1936 when this alleged cause of action arose, and 1937, when this complaint was filed. Matters of fact of which judicial notice is taken need not be alleged in pleading. 16 Alabama Digest, Pleading, page 19, ☞6.

■ This complaint charged that Alabama Power Company (judicially known to be a public service company) was engaged in furnishing lighting service to residents in Cordova, and further that plaintiff was a customer being furnished such service for a consideration to be paid, and this service was wrongfully discontinued. This sufficiently charged that plaintiff had complied with the conditions entitling him to service, and a breach of the duty to continue service.

No reversible error appears in overruling the demurrer to the complaint.

Evidence for plaintiff was to this effect:

He had resided in Jasper where he was a customer of defendant. He purchased a business in Cordova, rented a residence and removed with his family to Cordova. On arriving in Cordova late in the afternoon, he promptly went to see Fred Gladden, defendant's local manager at Cordova, to arrange for light service. The manager advised him the current had never been cut off from this residence, that he could proceed to replace fuses, if removed by the outgoing tenant, turn on the current, and make formal application on the following day, as well as a deposit, or a transfer of his Jasper deposit. Plaintiff did replace fuses, turn on the current and receive service for lights and household fixtures during that night and the following day. About noon of that day the manager came to the residence, read the meter, cut out the former customer and cut in the new. Near night of the same day the manager, without notice to plaintiff and in his absence, cut off the service. Plaintiff promptly offered to make formal application, and deposit as theretofore agreed.

■ There is some conflict as to details. These were for the solution of the jury. The defense was rested upon evidence tending to show it was dangerous to continue the service in the then condition of the wiring of the building, and defendant was under the legal duty to discontinue service. It is insisted defendant was entitled to the affirmative charge with hypothesis in view of clear and undisputed evidence on that issue. Alabama Power Co. v. Sides, 229 Ala. 84, 155 So. 686; Johnson v. Alabama Power Co., 230 Ala. 91, 159 So. 695; Alabama Power Co. v. Jones, 212 Ala. 206, 101 So. 898.

The evidence of Mr. Gladden and Mr. L'Heureux, the district superintendent at Jasper, expert witnesses for defendant, tended to show that the switch then and theretofore in use at this residence was of the old open type, with an element of danger from personal contact with energized parts resulting in shock, and a further element of danger for lack of a ground wire at this switch in case of lightning or an upsurge of current on the house-wiring and fixtures from other cause.

It appears a new type of switch had been devised enclosed in a metal box, eliminating the hazard from accidental contact with the open type; that this new type was provided for in the National Electric Code approved by Underwriters, which Code had been adopted by defendant company. This Code further called for a ground wire from the switch. It further appears, however, that it was not the policy of the defendant company to require old customers to immediately install this new equipment, but did require same before rendering service to new customers.

■ A public utility is not required by law to require the customer to install every new device, which, through experience and the progress of science, may be found to eliminate some element of danger, however remote. But where the

standards of equipment essential to a well regulated utility requires the replacement of the old with the new and improved type, it is the right and may become the duty of the utility to require installation of the new. But this does not imply that in changing from equipment theretofore esteemed to be standard and in use by well regulated utilities to new and improved equipment, the utility owes no duty to cooperate in maintaining a continuous service to customers so far as practical.

 The evidence here is not so clear, convincing and free from adverse inference, as to warrant an affirmative instruction as requested. Alabama Power Co. v. Sides, supra. Evidence tended to show the plaintiff had acquired the status of a customer, and was entitled to service on the same conditions as his neighbors, who still receive service through the open type switch. No discrimination in service is a cardinal rule governing public utilities.

The evidence that the old equipment was dangerous to the degree which imposes on the utility the duty to forthwith discontinue service is not free from conflict.

In this connection the laying of a predicate to impeach one of defendant's witnesses on this point by conflicting statements on another trial was without error.

The policy asserted on behalf of defendant clearly implies the old equipment was not deemed dangerous in such fashion as imposed a legal duty to discontinue service at once and without notice.

The evidence of the local manager was to the effect that before discontinuing service he saw the owner of the building, plaintiff's landlord, called upon him to install the new switch and ground wire, and he refused. This owner, however, as a witness deposes that a demand was made upon him also to rewire the residence, that he expressed a willingness to install the new switch and ground wire, but declined to rewire the house. It appears no new switch was to be had at Cordova or Jasper. One was obtained from Birmingham, and installed with ground wire, and then the service was resumed. For six days the service was off.

The conflict between the testimony of the manager and that of the owner was a matter for the jury. This conflict would render improper an affirmative charge for defendant.

Regardless of any declination on the part of the owner, it would not follow that plaintiff, the customer to receive and pay for the service, could be cut-off without notice and an opportunity to install the new equipment.

What has been written suffices to indicate there was no error in refusing charges 17 and 18 for defendant.

It was well within the province of the jury to find that, while a ground wire at the switch added somewhat to the safety afforded by ground wires as theretofore installed, the sudden discontinuance of service without notice and opportunity to install such additional ground wire was wrongful and arbitrary.

The duty to render a public service carries the duty to cooperate in rendering a prompt and continuous service.

Other rulings presented for review present no ground for reversal. We forego further discussion.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.