197 So. 374

**ALABAMA POWER CO. v. GLADDEN.**

**7 Div. 522.**

Court of Appeals of Alabama.

June 29, 1940.

W. M. Beck, C. J. Scott, Isbell & Beck, and Scott & Dawson, all of Fort Payne, for appellee.

C. A. Wolfes, of Fort Payne, and Martin, Turner & McWhorter and J. C. Blakey, all of Birmingham, for appellant.

SIMPSON, Judge.

This is an action for damages for personal injuries alleged as the proximate result of defendant's negligence as charged in Count No. 1 of the complaint. This is the second appeal by defendant (appellant)

from a second judgment recovered by the plaintiff. The first appeal (opinion by the Supreme Court) is reported in 237 Ala. 527, 187 So. 711, wherein (among other points decided) Count No. 1, upon which recovery proceeded in each trial, was held to be invulnerable against the demurrers interposed. Errors urged upon the appeal are predicated upon the refusal of the trial court to give the general affirmative charges requested by the defendant.

Briefly stated, the evidence for the plaintiff, a young man of twenty-five years of age, was to the effect that, on the morning alleged, the plaintiff, in company with Meyers, a boy companion, each mounted, rode to a public watering place (at a branch), situated alongside and near the public highway which leads from Collinsville, DeKalb County, to Lookout Mountain. Some six feet high from the ground at this place was a telephone line, owned by others than the defendant company, strung also from Collinsville to the mountain. As the two riders approached the branch to water their horses, Meyers touched the telephone wire and the electric shock caused his horse to fall to its knees, and, immediately thereafter, as plaintiff's horse, "went into the wire," it was shocked or knocked to the ground. The plaintiff fell, or was thrown, under his horse, and was severely injured, remaining unconscious for an hour or more, and—according to his testimony—suffered a burn across the muscle of his arm and, perhaps, another about his neck, all with the resulting injuries, permanent and otherwise, as catalogued in the complaint; that his companion in attempting to extricate the plaintiff from his plight, under the stricken horse, put his foot on the wire to push it out of the way and received a burn across the sole of his shoe; that the transmission line of defendant company, which paralleled the highway, a short distance away, had a service line, leading off therefrom, to a "Mr. Keener's house." In tracing the telephone line from the scene of the accident back toward Collinsville, it was discovered, according to witnesses for the plaintiff, that the power line of defendant near Keener's house, which upon its original construction had been strung above the telephone line, was hanging down upon and in contact with the wire of the telephone company. At and around this point on the power company wire, the insulation was hanging ragged, appeared to be worn away, or was otherwise in a state of considerable deterioration. Witnesses for plaintiff further testified that on the same morning, about the time of the accident, the "humming and singing" of the power line attracted their attention and that they then observed the two lines in contact and the condition of the insulation of the power wire, as related, and that Mr. Dobbs, local manager of the defendant company, after coming to the place of the accident, admonished those present "not to touch the wire, that it was hot" (meaning the telephone line with which plaintiff and his horse had come in contact).

The tendency of the defendant's evidence —some of its witnesses testifying that they had, on the same morning, come in contact with the same telephone wire without deleterious effect—was to refute the fact that the wire was electrified by defendant's line, that Dobbs tested the telephone line with a voltometer shortly after the alleged occurrence with a resultant negative showing, and that an immediate check of defendant's system nowhere disclosed any of its lines impinging upon any foreign wires. Dobbs also, after explaining his qualifications, in order to testify on the subject, stated that a ring by a customer on the telephone line would generate from 100 to 125 volts of electricity, which would be sufficient to produce a shock to a person, who was not so susceptible thereto as was a horse.

Under the conflict in the evidence, thus presented, the trial court properly submitted the issue to the jury for consideration, and in the refusal of the court to give the general affirmative charges, requested by defendant, there was no error.

The well established rule of law governing the giving of general affirmative charges, and applicable here, is that, when the evidence is in conflict or when conflicting inferences may reasonably be drawn therefrom, or where it contains conflicting tendencies, a jury question is presented and the general affirmative charge should not be given nor a verdict directed. Jefferson County B. & L. Association v. Weaver, 25 Ala.App. 189, 143 So. 193; Williams v. Webb & Sons, 235 Ala. 433, 179 So. 528, 529, 530. It can also be added that it is further an established rule that, in determining the correctness of the trial court's refusal to give such instructions, the entire evidence must be viewed in its most

favorable aspect for the adverse party, against whom they have been requested. Aiken v. McMillan, 213 Ala. 494, 106 So. 150. Or as otherwise expressed, where there is evidence from which a reasonable inference may be drawn adverse to a party, the affirmative charges requested by him are properly refused. Orman v. Scharnagel, 210 Ala. 381, 98 So. 123; Commonwealth Life Ins. Co. v. Clark, 25 Ala.App. 588, 151 So. 604; Norwood Hospital v. Brown, 219 Ala. 445, 122 So. 411. It must be said in this case that there was at least a scintilla, if not more, of evidence to support the plaintiff's complaint and from which a reasonable inference might be drawn adverse to the defendant—necessitating reference of the issue to the jury for decision.

The burden of proof rested on the plaintiff to show culpable negligence on the part of the defendant. It was, therefore, incumbent that he establish by competent evidence (a) a duty owing to him, (b) a breach or failure to perform that duty for which defendant was responsible, and (c) resulting injury caused thereby. 45 C.J. 1163. Applying this rule to the instant facts, it is our opinion that the evidence clearly established culpable negligence on the part of the defendant and resulting injury to the plaintiff.

(a) It was plainly the duty of defendant company to guard against the negligence counted on. McKay & Roche v. Southern Bell T. & T. Co. et al., 111 Ala. 337, 19 So. 695, 31 L.R.A. 589, 56 Am.St. Rep. 59; Dwight Mfg. Co. v. Word, 200 Ala. 221, 224, 75 So. 979; Alabama Power Co. v. Cooper, 229 Ala. 318, 156 So. 854; Curtis Law of Electricity, Sec. 510, p. 765. Interesting authorities are also collated in City of Henderson v. Ashby, 179 Ky. 507, 200 S.W. 931, 14 A.L.R. 1018, 1023 et seq. and Humphrey v. Twin State Gas & Electric Co., 100 Vt. 414, 139 A. 440, 56 A.L.R. 1011 et seq.

(b) The following cases, as well as those supra, demonstrate not only a clear duty resting on the defendant under the circumstances prevailing here but also the defendant's responsibility for its breach or failure of performance. It was this defendant's clear duty to keep its line at the point detailed properly insulated and to maintain the same without contact with the wire of the telephone company so as to avoid injury or damages to others rightfully pursuing lawful purposes. Birmingham R.

L. & P. Co. v. Cockrum, 179 Ala. 372, 60 So. 304; McKay case, supra.

(c) This court is also of the opinion that there were sufficient facts adduced upon trial from which the jury could infer that the plaintiff's injuries resulted proximately from the negligence alleged.

It may be useful to state several propositions of law, declared by eminent authority, which lend support to our conclusion:

(1) "Generally speaking, it is understood in the books that the proximate cause of an injury is the primary moving cause which, in the natural and probable sequence of events, and without the intervention of a new or independent cause, produces the injury." Louisville & N. R. Co. v. Maddox, 236 Ala. 594, 598, 183 So. 849, 851, 118 A. L.R. 1318, and cases cited.

(2) "One who negligently creates a condition from which danger arises through other agencies, reasonably to be anticipated, may proximately contribute to the resultant injury." Capital Motor Lines v. Gillette, 235 Ala. 157, 161, 177 So. 881, 884.

(3) "Where a cause is shown which might produce a particular injury it may, it is sometimes stated, be presumed, in the absence of evidence to the contrary, that it was the cause of such injury." 45 C.J. 1147.

(4) "A company, however, which negligently permits its dangerous current to be diverted to other wires, or a company which negligently takes from wires of another a dangerous current and conducts it upon its own wires, is chargeable for the consequences which attend the conduction of the dangerous current along wires not intended to carry it. A company having a dangerous current upon its wire is bound to know that it may escape if the insulation is defective and that it will go wherever there is a conductor to carry it." Curtis, Law of Electricity, p. 657.

From these authorities, in connection with what we have already said, we hold that the trial court properly submitted the issues to the jury for determination.

This court is not convinced to the contrary, by the ingenious argument of aggressive and astute counsel of appellant, that there is no proof that the line to Keener's house was then in use and electrified. We take judicial cognizance of the fact that the defendant is a public utility en-

442

gaged in furnishing electric light and power service, through its lines, to residents of cities and communities in Alabama. Alabama Power Co. v. Henson, 238 Ala. 348, 191 So. 379, and cases there cited.

■ If the power line, at the point of impact with the telephone line, was not in use or electrified, the circumstances strongly rebut such inference and, since this was well within the intimate knowledge of defendant corporation, it was incumbent that it establish the fact by the evidence and not the duty of plaintiff to disprove it. 45 C.J. Sec. 773, p. 1205.

■ Furthermore, we are strongly persuaded, although it has not been noted by the parties in brief, that our decision here —if, in fact, the issue was not then disposed of—is controlled and influenced importantly by the concluding words of the Supreme Court's opinion on the first appeal.

The sole error now urged by appellant, viz., the refusal of the lower court to give for the defendant (appellant) the general affirmative (requested) charge, was also, by proper assignments of error, insisted upon by the appellant (in the Supreme Court) on the former appeal. Although the judgment, upon the first appeal, was reversed because of erroneous rulings of the trial court, regarding the testimony of plaintiff's witness Weaver, the Supreme Court, speaking through its able and experienced Justice Thomas, concluded its opinion, to-wit [237 Ala. 527, 187 So. 714]: *"The case should be retried.* The judgment of the circuit court is reversed and the cause is remanded."* (Italics ours.)

This quoted statement, as we conceive it, is in effect a legal pronouncement that, on the facts as disclosed by the record in that case, the defendant was *not* entitled to the general affirmative charge, this same question being then and there before the court. In fact, logical deduction admits of no other conclusion. The matter of the right of the defendant to have such charge given by the court, under the disclosed facts, was squarely before the Supreme Court for review on this first appeal and neither judicial propriety nor consistent reason could concede that this distinguished court of last resort would have, by the quoted words, "the case should be retried," dictated the right of the retrial of the cause, if under these facts the defendant, in the first instance, was entitled to an in-

structed verdict. If, therefore, the same point, under substantially the same state of facts, was before the trial court upon the second trial, that court as well as this court should be, it seems to us, bound by the authority of this first opinion, supra.

A careful study of the case records in each appeal (reference to which can be had should the case again be reviewed by the Supreme Court) reveals, beyond question, that the evidence, in all essential phases, was not substantially different. In fact, it was, in the main, substantially the same in both cases. The general affirmative charges requested by defendant in both trials were identical.

This being the state of the record, the decision in this first appeal (Supreme Court) has already posed for us the law upon the question now presented for review and it is here controlling. By law, Code 1923, Section 7318, we are, in our view, bound thereby as to a decision of the same point now again presented. So, on the merits of the record presented for our review and under this eminent authority, this court is now constrained to hold that in the refusal of the trial court to give for defendant the general affirmative charges requested there was no error, and the judgment is accordingly affirmed.

Affirmed.