## ALABAMA POWER CO. v. SHAW.
### (7 Div. 617.)

(Supreme Court of Alabama. Dec. 2, 1926. Rehearing Denied Jan. 13, 1927.)

1. **Negligence ☞136(26)—Employé's contributory negligence in failing to remove pulley from employer's line shaft before defendant's employés tested meter held for jury.**

In action by employé against power company for injuries alleged to have been received from pulley bursting on employer's line shaft at time defendant's employés were testing meter, question of plaintiff's contributory negligence in failing to remove pulley from shaft *held* for jury, under evidence to effect that plaintiff was engaged in doing so and had not completed job.

2. **Negligence ☞108(1)—Count for injuries to employé from bursting of pulley on employer's line shaft when defendant's employés were testing meter held sufficient against demurrer.**

Count for injuries to employé, resulting from bursting of pulley on employer's line shaft when power was turned on by employés of power company testing electric meter, *held* sufficient as against demurrer.

3. **Limitation of actions ☞74(1)—Temporary unsoundness of mind extends period within which action for personal injury can be brought (Code 1923, § 8960.)**

Code 1923, § 8960, extending time within which to bring action for injury, *held* to include temporary unsoundness of mind, and is not confined to chronic or fixed insanity.

4. **Evidence ☞478(1)—Plaintiff's testimony of when he regained control of faculties held admissible to determine whether action for personal injuries was barred by limitations.**

In action for personal injuries, plaintiff was properly permitted to testify as to when he regained control of his faculties, for purpose of determining whether action was barred by statute of limitations.

5. **Evidence ☞502—Cross-examination on question of insanity, as extending limitation for bringing action for injuries, held within trial court's discretion.**

In action for personal injuries, cross-examination relative to actions of insane people, arising on issue of whether plaintiff's insanity extended period of limitations, *held* within sound discretion of trial court.

6. **Evidence ☞243(1)—Questions relative to statements of defendant's representatives before accident held admissible under circumstances showing statements were made by agent.**

In action for injuries alleged to have resulted from bursting of pulley on line shaft at time employés of power company were testing meter, questions as to statements made before accident relative to defendant's representatives' wishing to see meter operate under load held proper in view of circumstances showing statements were made by defendant's agent.

7. **Negligence ☞124(1)—Cross-examination of defendant's witness as to purpose of operating meter held proper, in action for injuries to employé from bursting of pulley on employer's line shaft.**

In action by employé for injuries alleged to have resulted from bursting of pulley on employer's line shaft at time defendant power company's employés were testing meter, cross-examination of defendant's witness relative to starting of meter and their purpose in doing so *held* not error.

8. **Appeal and error ☞1051(3)—Question relative to one of persons present at injury being defendant's manager held not prejudicial, in view of admission that other person present was manager.**

In action against power company for injuries alleged to have resulted from bursting of pulley on line shaft at time defendant's employés were testing meter, questions relative to one of persons present being manager of defendant company *held* not prejudicial, in view of admission that other person present was manager.

---

**9. Master and servant ⬤➝332(4)—Refusal of charge relieving company from liability for acts of person present when injury occurred held not error under evidence.**

In action by employee against power company for injuries alleged to have resulted from bursting of pulley on employer's line shaft at time defendant's employés were testing meter, refusal of charge relative to one of persons present having no authority and not acting within scope of employment in testing meter, *held* not erroneous under evidence that authorized agent of defendant was present and acquiesced in all that was done.

**10. Negligence ⬤➝25—Power company held to have no duty to inspect pulley injuring employé of owner.**

Power company, in testing meter, had no duty to inspect pulley on line shaft with which it had no connection, as respects duty owed employé of owner.

**11. Negligence ⬤➝139(7)—Refusal of charge that power company had no duty to employé before testing meter to inspect employer's shaft held erroneous.**

In action by employé against power company for injuries alleged to have resulted from bursting of pulley on line shaft at time defendant's employés were testing meter, refusing charge that defendant had no duty to inspect shaft prior to injury *held* erroneous.

**12. Corporations ⬤➝518(1)—Complaint against corporation for injuries may be supported by proof of negligence of its servants without proof of corporate authority.**

In action by machinist's employé against power company for injury, where plaintiff relies on simple negligence, averments of complaint may be supported by proof of negligence on part of defendant's servants or agents within scope of their authority without proof of corporate authority for act complained of.

**13. Damages ⬤➝169—Admission of proof that plaintiff was regular worker at time of accident held reversible error.**

In action for injuries, admitting proof that plaintiff was a regular worker at time of accident *held* reversible error.

Appeal from Circuit Court, Shelby County; E. S. Lyman, Judge.

Action by John F. Shaw against the Alabama Power Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Count 1 is as follows:

"Plaintiff claims of defendant $75,000, as damages for that heretofore, to wit, on the 3d day of June, 1924, plaintiff was in the service or employment of the operator of the waterworks system at Calera, Ala., to wit, C. W. Ade, and while upon the premises of plaintiff's said employer engaged in or about work for his said employer upon his premises, an object, to wit, a pulley or shaft, or a part or parts thereof, being a part of the equipment in the possession of his said employer upon said premises, fell upon or struck plaintiff, and as a proximate consequence thereof plaintiff's eye was gouged or forced out of its socket, and plaintiff's eyesight was greatly impaired and plaintiff's jaws were broken, his nose was broken, his teeth were broken and otherwise injured, and a hole or holes were cut or made in plaintiff's face, and plaintiff was cut, bruised, mashed, strained, sprained, and otherwise injured in his face, head, eye, jaws, and various parts of his person, and was rendered unconscious and remained so for a long time, and was made sore and sick, was crippled and disfigured for life, and his nervous system and mind and brain were greatly injured or impaired, and plaintiff was rendered for a long time unable to work and earn money, and plaintiff suffered great mental and physical pain and anguish, and plaintiff was caused to lose much time from his work, and his ability to work and earn money was greatly impaired, and plaintiff was put to great trouble, inconvenience, and expense for board, lodging, and services in a hospital or hospitals, and was put to great trouble, inconvenience, and expense for medicine, medical and surgical attention, nursing and care, all to his damage, wherefore he sues, and he also claims punitive damages.

"Plaintiff further avers that defendant, who was engaged in or about some work upon the premises of plaintiff's said employer, negligently caused said object to fall upon or strike plaintiff, upon the occasion aforesaid, and, as a proximate consequence of said negligence, plaintiff suffered said injury and damage."

To this count these grounds of demurrer were interposed:

"(1) For that same fails to aver any duty which the defendant owed to the plaintiff at the time and place alleged.

"(2) For that same fails to aver the breach by the defendant of any duty which it owed to plaintiff at the time and place alleged.

"(3) For that the same is vague, uncertain, and indefinite, in this, that same fails to aver how or in what manner the defendant was engaged in or about the premises of plaintiff's said employer.

"(4) For that same is vague, uncertain, and indefinite, in this that it fails to aver or inform the defendant of what the defendant was engaged in at the time and place alleged.

"(5) For that same fails to aver how or in what manner the defendant's negligence caused said object to fall upon or strike plaintiff.

"(6) For that the averment that the defendant's 'negligence caused said object to fall upon or strike plaintiff' is a mere conclusion of the pleader and not supported by any statement of fact.

"(7) For that the said complaint and each count thereof shows on its face that it is barred by the statute of limitations of one year.

"(8) For that same fails to state a cause of action, in this, that same shows on its face that the cause of action therein alleged is barred by the statute of limitations of one year.

"(9) For that same avers that the alleged cause of action accrued, if at all, on the 3d day of June, 1924, and same shows that this suit was filed in said court on the 17th day of June,

⬤➝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

1925, and it is therefore barred by the statute of limitations of one year."

Plaintiff propounded these questions to his witness, and the following replies were made:

"Q. Did you hear anybody connected with Alabama Power Company say that they wanted to see it operate under a load? A. Yes; we tried out the motor first after they completed installing the meter.

"Q. Who connected with Alabama Power Company said anything, if anything was said by them, about trying it out under a load? A. Yes; when we started the motor off there was one of the men said, 'Put on the belt and try it with a load,' and I told him, 'No; I do not want to try it with a load, that I did not think the pump was ready to run.'"

The action of the court in overruling defendant's motions to exclude the answers is made the basis of assignments 5 and 7. The following question was propounded to, and the following answer was made by this witness:

"Q. I believe you stated that you had seen Mr. Johnson there before the accident performing the duties in control of the plant of the Alabama Power Company at Calera? A. Yes, sir."

The court overruled defendant's objection to the question and motion to exclude the answer, and these rulings are the subject of assignments 8 and 9.

The following occurred on the examination of this witness by plaintiff:

"Q. What work was Mr. Johnson doing, what control, if any, was he doing there? A. All I know is he was just assisting in the company's work, and that is all I know.

"Q. Who, if anybody, was giving orders and superintending the work up to that time that Mr. Shaw was hurt? A. Well, Mr. Johnson."

The overruling of objections to these questions and of motions to exclude the answers is made the basis of assignments 20 to 23.

On cross-examination of defendant's witness Wade, the following occurred:

"Q. Don't you know the very craziest people that are in the asylums will frequently talk sensible for a little while and the characteristic is they fly off? A. I take a man when he is talking sensible to be sensible, when he is talking unreasonable to be foolish.

"Q. If a man cannot control his mind but for a few minutes and flies off and nearly every time you talk to him, when you talk to him nearly every day, you say that kind of a mind is sound? A. Well, as I say, I don't think Mr. Shaw's mind was sound for at least two weeks after he got home."

The overruling of objections to these questions and of motions to exclude the answers is made the basis of assignments 26 to 29.

On cross-examination, defendant's witness Sherer testified: "The Alabama Power Company employés had something to do with the meter and with the lines or wires into the meter, and with starting the meter to see whether it would operate. We started it to see whether it would operate. We were not playing with it. We were all working for the Alabama Power Company when we started that machinery." Thereupon the plaintiff asked this question, defendant's objection to which was overruled: "You were doing it for the purpose of seeing how it would work?" The witness answered: "Yes; how the meter would work." Motion to exclude this answer was overruled, and these rulings are made the basis of assignments 30 and 31.

These charges made the basis of assignments 42, 43, 45, 46 and 47, were refused to defendant:

"(5) I charge you, gentlemen of the jury, that the defendant is not responsible for the alleged act of the said Johnson in directing that the belt be placed in the pulley.

"(6) I charge you, gentlemen of the jury, that, if you believe the evidence in this case the said Johnson was not engaged in the line and scope of his employment in directing that the belt be placed on the pulley."

"(8) I charge you, gentlemen of the jury, that, at the time the plaintiff received his alleged injuries, the defendant had not delegated to the said Johnson any authority with reference to the installation of C. W. Wade's electrical appliances."

"(13) The court charges the jury that there was no duty on the agents or servants of defendant to inspect the shaft of C. W. Wade prior to plaintiff's injury.

"(14) The court charges the jury that there was no duty on the defendant through its servants or agents to inspect either the pulley which burst and injured plaintiff or to inspect the shaft on which said pulley was located."

Leeper, Wallace & Saxon, of Columbiana, and Martin, Thompson, Foster & Turner, of Birmingham, for appellant.

Certainty is required to give adversary parties reasonable notice of what they must be prepared to meet. Woodward Iron Co. v. Marbut, 183 Ala. 310, 62 So. 804; T. C. I. & R. Co. v. Smith, 171 Ala. 251, 55 So. 170; Southern C. O. Co. v. Woods, 201 Ala. 553, 78 So. 907; McGhee v. Reynolds, 129 Ala. 540, 29 So. 961. Mental aberration, due to injury and of temporary nature, is not insanity within Code 1923, § 8960. City of Hastings v. Foxworthy, 45 Neb. 676, 63 N. W. 955, 34 L. R. A. 321. A person whose mental condition is in question is not competent to testify as to the soundness of his own mind. O'Connell v. Beecher, 21 App. Div. 298, 47 N. Y. S. 334; Burney v. Torrey, 100 Ala. 157, 14 So. 685, 46 Am. St. Rep. 33. The burden was on plaintiff to show that at the time of the negligent act the servant doing it was engaged within the line and scope of his employment. Palos C. & C. Co. v. Benson, 145 Ala. 664, 39 So. 727. A witness must not testify to conclusions. Colley v. A. B. & I. Co., 196 Ala. 374, 72 So. 45; A. G. S. v. Flinn, 199 Ala. 177, 74 So. 246;

Houston v. Elrod, 203 Ala. 41, 81 So. 831. Charges 13 and 14 should have been given. Ala. Power Co. v. Jones, 212 Ala. 206, 101 So. 898. A complaint alleging that "defendant negligently caused," etc., is not supported by proof that the act was done by an agent or servant. Jones v. Kirkpatrick Sand Co., 208 Ala. 365, 94 So. 595. To charge the agents or servants with negligence in starting the machinery, the danger must have been known to them. Crider v. Yolande, 206 Ala. 71, 89 So. 285. A quotient verdict is illegal and void. Int. Agri. Corp. v. Abercombie, 184 Ala. 244, 63 So. 549, 49 L. R. A. (N. S.) 415; L. & N. v. Bishop, 17 Ala. App. 320, 85 So. 859.

Harsh & Harsh, of Birmingham, and L. H. Ellis, of Columbiana, for appellee.

The complaint is sufficient. Dwight Mfg. Co. v. Holmes, 198 Ala. 591, 73 So. 933; Birmingham Term. Co. v. Thomas, 207 Ala. 364, 92 So. 803; Ala. Power Co. v. Talmadge, 207 Ala. 91, 93 So. 548; Vulcan Rivet Co. v. Lawrence, 214 Ala. 378, 108 So. 4. Insanity is the generic term for all unsound and deranged conditions of the mind. Burnham v. Mitchell, 34 Wis. 117; Cundall v. Haswell, 23 R. I. 508, 51 A. 426; Seitzinger v. Modern Woodmen, 204 Ill. 58, 68 N. E. 478; De Gogorza v. Knickerbocker L. I. Co., 65 N. Y. 232; Jacks v. Estee, 139 Cal. 507, 73 P. 247; Warner v. State, 114 Ind. 137, 16 N. E. 189; In re Carmichael, 36 Ala. 514; 32 C. J. 594, 595, 761. Plaintiff was properly allowed to testify to his recollection of what occurred during the two months following his injury. 22 C. J. 610. Charges 13 and 14 were misleading in this case. Ala. Power Co. v. Jones, 212 Ala. 206, 101 So. 900. The case of Jones v. Kirkpatrick Sand Co., 208 Ala. 365, 94 So. 595, is not correctly interpreted by appellant. Morrison v. Clark, 196 Ala. 674, 72 So. 305; City, etc., Co. v. Henry, 139 Ala. 166, 34 So. 389; Reed v. Ridout, 212 Ala. 433, 102 So. 906. Defendant was almost an insurer against any of its servants doing anything negligent or wrong while on premises of plaintiff's employer to plaintiff's injury. Jones v. Kirkpatrick Sand Co., 208 Ala. 368, 94 So. 595.

GARDNER, J. Plaintiff in this action, appellee here, was, at the time of his injury, an employé of one C. W. Wade as combination machinist and carpenter, preparing for the operation of two pumps by electricity in erecting a line shaft in the room with the pumps. The shaft had a pulley from which a belt ran to the pulley on the electric motor, and there were two other pulleys on the line shaft from which belts ran to the pulley on each of the pumps. There was a useless wooden pulley on the shaft which plaintiff had been instructed by Wade to move, and which he insists he intended to move just before the completion of his work in this connection. The equipment upon which plaintiff was working, the pumps, electric motor, line shaft, and wiring between the meter and motor were all owned by Wade. The meter was attached to the wall of the room some six or eight feet from the motor; the line shaft was on a frame and had been in use about four years, and appellee was familiar therewith.

Some of the employés of defendant, Alabama Power Company, were present at the time of plaintiff's injury, installing a meter for said company, and awaiting completion of plaintiff's work to test the same. Among those present were Johnson and Sherer. The defendant insists that the latter was at the time its manager at Calera, the place of the accident, and that Johnson was with Sherer, being instructed in his duties preparatory to becoming the local manager. While not of vital importance, it may be stated as our conclusion there was evidence from which the jury could infer that Johnson was then in charge at that locality. In any event, both were present on this occasion for the purpose above indicated, and evidence tending to show acting within the line and scope of their authority, and so situated as to hear and see what was said and done. Plaintiff was working on the line shaft when the electric current was turned on and the machinery started in motion, resulting in the bursting of the wooden useless pulley, a portion of which struck plaintiff on the head, with resultant injuries not here necessary to detail.

Defendant insists that plaintiff, employé of Wade, and working on Wade's equipment, was familiar with this useless pulley, instructed by his employer to remove it; that defendant's employés did not know and were not informed of its condition, and had no connection therewith; that the current was turned on at the direction of plaintiff; and that the injury was the result of plaintiff's own negligence in failing to remove this useless pulley pursuant to instructions of his employer.

Plaintiff's theory is that he was still working on this line shaft, intending, but not yet ready, to remove the end of the shafting containing the useless pulley, and was not ready for the belt to be placed on the pulley of the motor and the machinery thus started, and that he gave no instructions or permission for the belt to be put on; that one Houston, also in the employ of Wade as electrician, was present and had informed one of defendant's employés in the presence of Johnson and Sherer not to put the belt on; that, notwithstanding, the belt was put on the pulley of the motor by an employé of defendant under the direction of Johnson as the machinery was started in motion by the turning on of the electric current by defendant's employé. Upon these conflicting theories and issues of fact, the evidence was in

sharp conflict, and there was evidence tending to sustain each theory.

[1] It is earnestly urged that plaintiff was guilty of contributory negligence under the undisputed proof for failing to more promptly remove the useless pulley, but, in view of the tendency of the evidence to the effect that plaintiff was still engaged in the work, and had not yet completed the job, intending at the conclusion to remove that end of the shafting, the question of contributory negligence presented by the pleading was one properly left for the jury's determination. Upon the whole case we are of the opinion the affirmative charge was properly refused.

[2] The case was tried on behalf of plaintiff upon count 1, the sufficiency of which was drawn in question by demurrer. Under the rule of pleading in cases of this character, now well established, we think the demurrer was properly overruled. Dwight Mfg. Co. v. Holmes, 198 Ala. 590, 73 So. 933.

[3] This action was commenced two weeks after the expiration of one year from the date of the accident, and plaintiff's reply to the plea of the bar of the statute of limitations was that, at the time the cause of action accrued, he was insane, and that suit was filed within one year after the termination of said disability. Issue upon said plea was thus joined, and the evidence offered tended to show that plaintiff's insanity was of a temporary nature, the result of the blow upon his head, rendering him wholly unconscious for several days and of unsound mind for some time thereafter. Defendant insists that the word "insanity," used in section 8960, Code of 1923, was not intended to include a temporary condition like the case at bar, but meant a diseased condition of the mind of a fixed or chronic nature. In 32 Corpus Juris, p. 594, it is said:

" 'Insanity' is a broad, comprehensive, and generic term, of ambiguous import, for all unsound and deranged conditions of the mind. * * * And it ordinarily implies every degree of unsoundness of the mind, whether it is casual, temporary, or permanent."

And in Johnson v. M. & N. B. Ins. Co., 83 Me. 182, 22 A. 107, the court, speaking as to the meaning of the word "insanity," said:

"When this word occurs, unexplained or unlimited, in any statute, * * * it signifies any derangement of the mind that deprives it of the power to reason or will intelligently."

The insanity here insisted upon comes within the definition of traumatic insanity as set forth in 32 Corpus Juris, p. 602, as follows:

" 'Traumatic insanity' is such as results from a wound or injury, particularly to the head or brain, such as fracture of the skull or concussion of the brain."

As the word "insanity" appears in section 8960 of our Code, it is unexplained and unlimited. Viewing the purpose of the statute and the broad and comprehensive meaning of the word, we are of the opinion that it embraces a temporary unsoundness of mind as indicated by the proof, and is not to be confined to chronic or fixed condition. The case of Burnham v. Mitchell, 34 Wis. 117, is here very much in point, the court there dealing with the meaning of the word as applicable to the statute of limitations, and the opinion of the court fully supports the conclusion here reached. The assignments of error presenting this contention are without merit.

[4] Plaintiff was permitted, over defendant's objection, to testify as to when he regained control of his faculties. It is objected that this is allowing a witness to give evidence of his own unsoundness of mind, citing O'Connell v. Beecher, 21 App. Div. 298, 47 N. Y. S. 334, and Burney v. Torrey, 100 Ala. 157, 14 So. 685, 46 Am. St. Rep. 33. But we think this is a misconstruction of the testimony. The witness was not testifying as to his mental unsoundness, but only to a fact, of which he should be capable of testifying, as to regaining control of his faculties. We do not think it would be incompetent for one who was rendered unconscious by a blow on the head, as was plaintiff, to state when he first regained consciousness, and we class the evidence here objected to with this character of proof. 22 C. J. 611; Birmingham R. R. Co. v. Jackson, 136 Ala. 279, 34 So. 994.

[5] The questions objected to, forming the basis of assignments 26 to 29, were asked by plaintiff on cross-examination of defendant's witness, clearly within the sound discretion of the trial court, and these assignments of error need no further comment.

[6] The questions, objections to which constitute the foundation of assignments 5 and 7, call for testimony tending to show what occurred in the shop just before the accident. The only objection urged is that there was no proof that the statement made was by any agent of defendant company, but plaintiff could not prove all essentials at one time, and besides the facts and circumstances previously shown suffice, we think, for this purpose.

[7] Assignments 30 and 31, relating to questions by plaintiff on cross-examination of defendant's witness, so clearly present no reversible error as to call for no discussion.

[8] Whether Johnson was in fact the manager of defendant at Calera at the time is not of material consequence, in view of the fact that all that was there said and done was in the presence and hearing of Sherer, whom defendant admits was the manager, and in addition thereto the evidence was clearly sufficient for the jury to infer that what was done, of which plaintiff complains, was by an employé of defendant, acting within the line and scope of his authority. This would suffice without regard to the question of who

was in fact in control of defendant's business. Defendant insists that the testimony, objections to which constitute assignments 8, 9, 20, 21, 22, and 23, was objectionable as calling for a conclusion of the witness as to who was in control (citing Colley v. Atl. Brew. & Ice Co., 196 Ala. 374, 72 So. 45; A. G. S. R. R. Co. v. Flinn, 199 Ala. 177, 74 So. 246; Houston v. Elrod, 203 Ala. 41, 81 So. 831), but we are of the opinion that, should it be conceded, without deciding the question, for the purposes of this case only, that the testimony was objectionable on the ground interposed, yet, for the reasons above stated, reversible error did not intervene, as we think it clearly appears defendant was not prejudiced thereby.

[9] There was other and independent evidence that Johnson was in charge, and, as before stated, all that was said and done was in the presence and hearing of Sherer who was admittedly in charge. In the refusal of charges constituting assignments 42, 43, and 45, there was no error.

[10] The equipment on which plaintiff was working was owned and controlled by his employer, Wade. Defendant had no connection with its installation, but was merely waiting for the completion of the work on plaintiff's part to test out the meter. Under these circumstances no duty rested upon defendant to inspect the pulley which burst on the shaft. In Ala. Power Co. v Jones, 212 Ala. 206, 101 So. 898, we quoted with approval the following principle, as found stated in 20 Corpus Juris, 364:

"Where wiring or other electrical appliances on private premises are owned and controlled by the owner or occupant of such premises, a company which merely furnishes electricity is not responsible for the insulation or condition of such wiring or appliances, and is not liable for injuries caused by their defective condition, to such owner or occupant, or to third persons on such premises. A like rule has been applied to poles and wires of a distributing company to which a generating company sells and delivers electricity for distribution and sale to the patrons of the distributing company. The duty and responsibility of a mere generating company is limited to make a proper connection and delivering the electric current to the purchaser's wire and appliances in a manner which, so far as such delivery is concerned, protects life and property, and there is no duty of inspection to see that the purchaser's wires and appliances are in a safe condition, and kept so."

[11] Charges 13 and 14 (assignments of error 46 and 47) state a correct principle of law as applicable to the situation here presented, and their refusal was error. As we read and understand the brief of counsel for appellee the correctness of the above noted principle is not questioned, but it is insisted that the charges had a tendency to mislead and their refusal was therefore justified. This argument is based upon evidence tend-

ing to show that defendant's employés were present, waiting on the completion of the work by plaintiff, and were told not to put the belt on the pulley, which was done notwithstanding, and that therefore the jury might be misled by these charges to understand defendant had the right to so connect the machinery and turn on the current without regard to plaintiff's safety. We think, however, the substance of this insistence is separate and distinct from the legal principle sought to be enunciated in these refused charges. The wooden pulley and shaft were unsafe, of which fact it is not pretended defendant's employés were informed. They were under no duty to inspect the same, as previously stated, and we think it was a matter of importance from defendant's standpoint that the jury be so instructed. We are not of the opinion the simple statement of this legal principle would have tended to mislead the jury, as to the matter of negligence argued by counsel for appellee. These charges should have been given.

It is insisted the affirmative charge was due defendant under the rule of City Delivery Co. v. Henry, 139 Ala. 161, 34 So. 389, upon the theory that the averments of the complaint called for proof of corporate authority for the act complained of, citing Jones v. Kirkpatrick Sand Co., 208 Ala. 365, 94 So. 595.

[12] In the present action, plaintiff relies upon simple negligence, an action in case, seeking recovery for consequential damages, and the averments of the complaint here in question may be supported by proof of negligence on the part of defendant's servants or agents acting within the line and scope of their authority. Cent. of Ga. Ry. Co. v. Kimber, 212 Ala. 102, 101 So. 827; Morrison v. Clark, 196 Ala. 670, 72 So. 305; Ala. Co. v. Norwood, 211 Ala. 385, 100 So. 479. If any statement in Jones v. Kirkpatrick Sand Co., supra, may be construed to the contrary, it was an inadvertence.

[13] Plaintiff was permitted, over defendant's objection, to prove by one of his witnesses, who stated that he had known him intimately, that plaintiff was a "regular worker" to the time of his accident.

In Davis v. Kornman, 141 Ala. 479, 37 So. 789, it was held, in a similar character of action, that such evidence was "immaterial to the injuries sustained, the only effect of which was to create sympathy for plaintiff and to improperly magnify his damages."

That the evidence was of a prejudicial character, if improperly admitted, we think clearly appears from the record. Plaintiff made full use of it in the testimony, not only of this witness, but that of himself and cross-examination of defendant's witness Wade.

In support of defendant's motion for new trial based upon the ground that the verdict was a quotient one: Certain calculations of

the foreman of the jury were introduced, which evidently played a vital part in the verdict rendered, and which disclosed stress was laid upon this feature of the evidence. We are cited to no authority by counsel for appellee sustaining this character of proof, but the argument rests largely upon a differentiation or criticism of Davis v. Kornman, supra. This authority is in our opinion in point, and, if it be followed, the ruling presents reversible error. We are not persuaded to a contrary view.

The remaining questions are those arising on motion for new trial, and need not be treated.

For the errors indicated, let the judgment be reversed, and the cause remanded.

Reversed and remanded.

All the Justices concur.