[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
The plaintiff has sued the defendant hospital for injuries he received when he slipped and fell while he was a patient. In his amended complaint, the plaintiff alleges that on June 21, 1996, an employee of the defendant entered his room turning on the shower. The room was flooded and the accident occurred when the plaintiff tried to get out of bed. The date of the accident in the original complaint is alleged to be June 26, 1998. It is not disputed that § 52-584 is the limitations statute that applies in this case. That statute provides that no suit "shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of.
The defendant argues that an action in our state is commenced when service of process is made. Rana v. Ritacco, 236 Conn. 330, 337 (1996). CT Page 11797 As noted, this action was not commenced within two years from the date when the injury happened. It was commenced two years and five days after that, June 21, 1996. Therefore, the defendant has filed a motion for summary judgment relying on the limitations statute.
The plaintiff advances several arguments. He argues that he was in the hospital from April 29 to July 2, 1996, and that during that time he was given "high dosages of strong narcotic drugs on a daily basis." The drugs and dosages are mentioned and the claim is made that these drugs cause hallucination and confusion.
The factual basis of the plaintiff's claims is set forth at two points in his brief. At page 10 he states:
 "The plaintiff was under the defendant's care and was completely dependant on the defendant to maintain records of his care. The dependancy was heightened due to his medicated state. The only date the plaintiff was aware of was his discharge date of July 2, 1996. Prior to that date, he was continually fed doses of narcotics which profoundly affected the central nervous system and his ability to think and perceive. He was unable to appreciate or recognize his injury. Yet, despite numerous requests by plaintiff's counsel to the defendant hospital, the defendant would not provide the plaintiff with his own medical records of the care he received."
At pages 10-11, the plaintiff states "without knowing the actual date (of his injury), the plaintiff was unable to show when his injury occurred, as would be required to bring an action for his injury. Later on page 11, it is argued "the plaintiff was not cognizant of his injury until his discharge on July 2, 1996. The plaintiff did not have an actionable injury, until he could discover the date on which such injury occurred. This information was solely in control of the defendants."
 I
Although "at two or three points in the beginning of his brief, the plaintiff used general language to the effect that he did not "appreciate" his injury or was not "cognizant" of it on the July 2, 1998. This is followed by assertions that he did not know the "date" of the injury. It is claimed the plaintiff thus was not aware of "actionable harm" because he did not know this "date"; it is said that the defendant hospital concealed the "date" from the plaintiff. Thus, the plaintiff does not appear to consistently argue that due to his medicated condition he did CT Page 11798 not even realize he was injured by the slip and fall or that he suffered any type of accident. The plaintiff submitted no affidavit in support of his opposition to the defendant's motion for summary judgment to elucidate this point.
Thus, the court will first assume that the plaintiff does not claim that he did and could not "discover" the injury, as such, until July 2, 1996 but simply argues that due to his medicated state and the fact that the hospital had his records he could not have ascertained the true date of the injury as June 21, 1996.
In this regard, the plaintiff first argues that because he did not know the date on which he was injured, he could not or be held to know that he suffered "actionable harm". The limitations statute runs from the date on which he knew or should have known of the "actionable harm". It is argued that due to a special relationship between the plaintiff and the defendant and the continuous course of treatment rendered to him between April 29 and July 2, 1996 when he was hospitalized, the defendant knew the plaintiff was under heavy medication and in fact administered this medication which rendered the plaintiff unable to ascertain the date of his injury and having his records which would have revealed that date, failed to turn the records over to counsel after suit was initiated. Frankly, the argument is difficult to follow in the sense that on the first page of its brief the plaintiff states that "the operative date for the statute is July 2, 1996. Is the plaintiff recognizing that on that date the plaintiff could have gone to the hospital record room, gotten his records and by examining them found out the date of injury? or is the plaintiff arguing the plaintiff could not have discovered "actionable harm" until some point late in the litigation because the defendant allegedly failed to comply with a discovery request for the records? In any event, as indicated, the court will analyze the issue from the perspective of a situation on where a plaintiff knew he was injured but did not know the date of his injury.
In Catz v. Rubenstein, 201 Conn. 39 (1986), the court defined "actionable harm". The court said:
 "This court has previously stated that § 52-584
"requires that the injured party bring suit within two years of discovering the injury . . . In this context injury occurs when a party suffers some form of "actionable harm'. . . . A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence . . . They are therefore CT Page 11799 necessary ingredients for `actionable harm.'" Id., pp. 43-44.
Knowledge of the date of the "actionable harm", per se, has nothing to do with whether or not there is "actionable harm". A specific date need not even be alleged; the complaint can state the incident giving rise to the suit occurred on or about a certain date. The actual date becomes relevant only insofar as a statute of limitations issue is raised by the defendant. In other words, knowledge of the date of the injury of its cause is known is not intrinsic to the cause of action because the date is irrelevant except for limitations purposes. This is underlined by the fact that a statute of limitations is deemed procedural especially where the limitations statute does not itself create the right of action. JonesDestruction Inc. v. Upjohn, 161 Conn. 191, 195 (1971). And, "where the limitation is deemed procedural and personal it is subject to being waived unless it is specifically pleaded because the limitation is considered merely as a bar to a remedy otherwise available." Avon MeadowCondominium Assn., Inc. v. Bank of Boston Conn, 50 Conn. App. 688, 699
(1998). Well, if the limitations statute can be waived the date on which any "actionable harm" occurred is obviously irrelevant to any necessary component of the term "actionable harm". Whatever analytical road leads to the argument — special relationship, continuous course of treatment, etc. — any argument confined to an assertion that the plaintiff knew he was injured, how and by whom but not when, standing alone, will not avoid the bar of the limitations statute.
But in fairness to the plaintiff by its special relationship argument, continuous course of treatment position citing Blanchette v. Barrett,229 Conn. 256 (1999) and at least allusions to the notion that until he was discharged from the hospital and off medication the plaintiff could not "appreciate" or was "not cognizant" of his injury by all of these arguments what the plaintiff is really advancing is an equitable tolling argument. That argument concentrates on the critical period between April 29 and July 2, 1996, when plaintiff was under the defendant hospital's care and through that care under the influence of heavy pain killing narcotic medication. When the argument is so confined, the defendant's dismissal of the applicability of the Blanchette case is not quite appropriate, at least to the court. In any event, the equitable tolling argument can be set forth in two ways to avoid the bar of the limitations statute. First, it could be argued that apart from the specific statutory language, equitable considerations presented by this case require that the statute be tolled. or it could be said that the ameliorative intent of the discovery of the injury language in § 52-584 would be fostered by reading that language to accommodate equitable tolling considerations given the facts of this case. CT Page 11800
The doctrine is discussed in § 54 CJS at § 117, where it said that:
 "Insanity or mental incompetency that tolls the statute of limitations consists of a mental condition which precludes understanding the nature or extent of one's affairs, an inability to understand or protect one's rights, because of an overall inability to function in society or the mental condition is such as to require care in a hospital."
In 51 Am Jur 2d at § 187, it states:
 "It is generally held or recognized that a person may be under the legal disability of insanity, or unsoundness of mind, within the meaning of the statute of limitations, when the disability if of such a nature as to show him (sic) unable to manage his (sic) business affairs or estate or to comprehend his (sic) legal rights or liabilities."
Generally, this exception is provided for by statute. In Kirwan v.State, 168 Conn. 498, 500 (1975), our court noted this to be the case in 46 states but not ours but seemed, in dicta, to recognize its operation in Connecticut. At page 502 of the opinion the court said:
 "If the plaintiff were legally incompetent to sue or his (or her) access to the courts were impaired, the statute could not commence the limitations period running until (the plaintiff) regained his (or her) legal competence; otherwise, through no fault of his (or her) own, (the plaintiff) could be barred from any redress and thus become a legally helpless and vulnerable target for any careless or malicious person, see Hobart v. Conn. Turnpike Co., 15 Conn. 145, 148."
Under this theory, the statute would be tolled only until July 2, 1996. In his brief, the plaintiff, at the very least, indicates he was off narcotic medication by that date and knew of the nature of his injury and by implication its cause. Suit was filed June 26, 1998 so that the statute under this theory would not be a bar to this action.
There are real problems with this position legally as well as factually. The court will first discuss the legal issues. The court could not find any cases that adopt the Kirwan position based upon a common law CT Page 11801 analysis as opposed to following statutory mandates. The court will thus rely on cases that it found interpreting statutes tolling limitations statutes raising facts and considerations relevant to those raised here regarding the plaintiff's mental state.
In Alabama Power Co. v. Shaw, 111 So. 17 (Sup.Ct., 1972), a man was seriously injured in an industrial accident and brought suit two weeks after the expiration of one year from the date of the accident — a statute of limitations defense was raised but overruled by way of demurrer. The Alabama Supreme Court upheld the trial court. Alabama had a statute of limitations period that tolled the statute during a period of insanity. The plaintiff was able to show the blow he received upon the head rendered him "unconscious for several days and of unsound mind for some time thereafter." Id., p. 20. The court first found that the "insanity" alleged came within the meaning of "traumatic insanity" and held the statute was tolled given the purpose of the statute and that it was meant to embrace "a temporary unsoundness of mind as indicated by the proof and is not to be confined to chronic or fixed condition." Id., p. 20.
On the other hand, interpreting a similar statute, the court inHarrington v. County of Ramsey, 279 N.W.2d 791 (Sup.Ct. Minn., 1979) said the following:
 "We hold that under the statute insanity means substantial inability, by reason of mental defect or deficiency, to understand one's legal rights, manage one's affairs, and prosecute the claim. As a corollary to this rule, we conclude that short, temporary occasions of mental illness are sufficient to toll the statute on the basis of "insanity" only if such short occasions substantially impair the general ability of the plaintiff to understand his rights, manage his affairs, and prosecute the claim. This determination of substantial impairment depends upon the duration of II the mental illness or defect as compared to the time within which suit must be brought." Id., pp. 795-96.
In Eisenbach v. M.T.A., 479 N.Y.2d 338 (Ct. of App., 1984), the plaintiff was seriously injured in a train accident. The parties agreed the limitations period was one year and thirty days — the action was not commenced until one year and eighty days after the accident. The issue before the court was whether the statute of limitations should have been tolled under "CPLR 208, for a sixty-eight day periods, following the accident during which appellant, while hospitalized and treated with CT Page 11802 strong pain killing drugs was, in his words `generally confused, disoriented and unable to effectively attend to (his) affairs.'" Id., p. 339.
The court held the statute should be narrowly construed and that: "The provision of CPLR 208 tolling the statute of limitations period for insanity, a concept equated with unsoundness of mind. . . . should not be read to include the temporary effects of medications administered in the treatment of physical injuries. The expansion of the statute to embrace such disability — undoubtedly experienced in varying degrees whenever pain-killing drugs are administered — should be accomplished, if at all, by legislative action." Id., pp. 339-40.
The latter observation is particularly to the point in this case, since this court is, after all, trying to interpret the import of dicta in the twenty-five year old Kirwan case. The loophole in limitations statutes would be quite large if, after every accident case where there is injury treated by pain killers, the statute were to be tolled.
Besides, applying the test of the previously mentioned Harrington case it is important to note that the injury occurred here June 21, 1996 while the plaintiff was under medication but the delivery of that mediation terminated only eleven or twelve days on July 2, 1996 — a point at which the statute had almost its full term to run.
In addition, if an equitable doctrine is being applied perhaps the following common sense observations are of some relevance: why couldn't the plaintiff have busied himself about bringing suit at any point from July 2, 1996 on. From that date, the plaintiff was off medication, certainly, by any construction of the plaintiff's brief, he appreciated his injury by then so that, for the court at least it is difficult to see why under these circumstances there should be any tolling of the statute. The plaintiff makes much of the fact that the hospital refused to turn over the plaintiff's medical records so that he was not able to ascertain the date of injury. But there is no affidavit filed by the plaintiff indicating for example that he went to the records room of the hospital the day of his release or any point thereafter and was refused his records. The papers attached to the plaintiff's motion opposing summary judgment only appear to indicate that the defendant did not want to comply with the plaintiff's production request after suit was filed
and this objection concerned only attorney-client communications and work product matters and not raw medical records. On November 3, 1998, a notice of deposition was sent by the plaintiff to the record's custodian of the defendant requesting not only copies of the plaintiff's medical chart but also "accident reports, notes, memoranda or other documentation of the accident" and copies not only of the "entire medical chart, x-rays, CT Page 11803 Ct-scans, MRI's, reports, etc. relating to Jose Ortiz." In one of the ongoing series of papers filed by both sides relative to these requests, the defendant in an April 26, 1999 objection to a production request said: "While the defendant has no objection to providing a complete copy of Jose Ortiz's medical record and has done so, the defendant does object to providing copies of any incident reports" claiming they were prepared in anticipation of litigation. Apart from the merits of the later position, nothing submitted by the plaintiff indicates there was a wholesale refusal to deliver medical reports of the plaintiff's hospital stay either after suit was filed or indeed at any point after the plaintiff was discharged from the hospital.
Another point to be made is the fact that trial courts would be immersing themselves in a quagmire if they merrily started using an equitable tolling analysis based on whether in particular cases, due to the medication they were being given, plaintiffs were sufficiently competent to understand that they had been injured and understood their rights flowing from that situation — the best way to administer the doctrine would be to first ascertain how long any claimed incompetency was alleged to have lasted even by the best scenario the plaintiff could present and then see if even with that was there reasonable time to bring suit. If there was, as is the case here, there is no occasion to equitably toll the statute. In that way plaintiffs are protected but the policy of the statutes of limitations is still preserved.
But even if the preceding analysis is incorrect or too harsh — and it may be — there is still no reason to consider an equitable tolling argument here as an addendum to the statute or as a way of reading or perhaps expanding the ameliorative effect of the discovery of injury language of the statute. That is so because there is no factual basis for the position. No affidavit has been submitted by the plaintiff describing his mental state from the date of June 21, 1996 to the date he was no longer under the influence of medication. Such testimony would have been relevant, see Alabama Power Co. v. Shaw, supra at 111 So. p. 20
(headnote 4). Also though a list of medications administered is provided along with xerox copies of pages from a reference work on the effects of the various drugs, there is no expert affidavit regarding the drugs, the admissibility of the reference work, or more importantly, what the effect would be of the medication on a particular person such as the plaintiff as regards his comprehension and memory — do the medications have the same effect on all patients, for how long and to what degree?
Insofar as the plaintiff makes an equitable tolling argument or seeks to use allegations about his medical condition in his brief to so define the language of § 52-584 to argue that he could not have "discovered" his injury prior to July 2, 1996 the court cannot accept these arguments CT Page 11804 legally or factually and the arguments are not aided by references to a special relationship or continuing course of treatment analysis.
 II
Although the plaintiff did not plead it the plaintiff also claims that the defendant fraudulently concealed the plaintiff's cause of action.Kennedy v. Johns-Manville Sales Corp., 135 Conn. 176 (1948) and Bartonev. Robert L. Day Co., 232 Conn. 527 (1 995) are cited. It is argued that the defendant's very actions caused the delay in filing suit. It is further noted that after suit was filed plaintiff's counsel repeatedly asked for the plaintiff's records but the defendant refused to turn over the records which "clearly contained reference to the plaintiff's date of injury and to the existence of his cause of action." The defendant's "only motivation in failing to provide the plaintiff with his own medical records, to which he is entitled, was to prevent his filing a timely complaint in this cause of action" (preceding quotes, pp. 17-18 of plaintiff's brief).
The plaintiff does not appear to have a valid argument under the fraudulent concealment statute. Commenting on § 52-595, the court inMartenelli v. Bridgeport Roman Catholic Dioceses, 196 F.3d 409, 427 (CA 2, 1999) the court said the following:
 "Although § 52-595 does not explicitly say so, it clearly implies that plaintiff's ignorance of the facts is a necessary element of tolling under that statute. A statute that tolls a limitations period because of the defendant's fraudulent concealment of a fact or facts obviously operates for the benefit of those — and we think only those — who are not aware of the facts that have been concealed. Moreover, because the statute provides that, after tolling, "the cause of action shall be deemed to accrue . . . at the time when the person entitled to sue thereon first discovers its existence, "there plainly can be no effective tolling for a plaintiff who was aware of the existence of his or her cause of action from the time the claim originally accrued. We therefore concluded that the plaintiff must be ignorant of the facts that the defendant has sought to conceal for the statute of limitations to toll under § 52-595."
This appears to comport with the general law to the effect that: "There can be no concealment which will prevent the running of the statute of CT Page 11805 limitations where the cause of action is known to the plaintiff or there is a presumption of such knowledge." 51 Am.Jur.2d § 148, p. 720.
The allegations that the defendant refused to turn over the medical records to the plaintiff miss the mark or at least two counts. First, the defendant's obligation to production requirements are made in the context of the attorney — client and work product privilege. The plaintiff requested not only all medical charts, reports, x-rays and Ct-scans but also all reports of the accident. There is nothing to indicate the plaintiff himself could not have requested his medical records alone as soon as they were generated. Secondly, all the alleged refusals occurred after litigation had begun and the statute had long expired. There certainly is no allegation the hospital concealed or refused to turn over records between the date of the accident and the date of discharge and it can hardly be argued that the defendant hospital should have reduced or cut off the plaintiff's pain medication so that he could determine the exact date of the accident as expeditiously as possible from self recollection or examination of medical records as soon as they were being produced.
The point of the matter is that the plaintiff (1) knew he was injured when he was in fact injured — nothing has been offered to the court to indicate the contrary — and (2) alternatively, or in any event, lie was off the allegedly mind-altering medication on July 2, 1996 when he was discharged.
 "For the purposes of the statute of limitations if the means of knowledge exist and the circumstances are such as to put a (person) of ordinary prudence on inquiry, it will be held that there was knowledge of what could have been readily ascertained by such inquiry and plaintiff cannot then set up a fraudulent concealment of his (or her) cause of action if his (or her) failure to discover it is attributable to his (or her) own negligence . . . and when plaintiff learns of information that would lead to discovery of a cause of action through due diligence the statute of limitations runs regardless of the fraudulent concealment." 54 CJS "Limitations of Actions", § 89, p. 128; see Burbridge v. Board of Assessors of Lexington, 417 N.E.2d 477, 480 (Mass. 1981); Miller v. Alt Robbins Co., Inc., 766 F.2d 1102, 1105 (CA 7, 1985).
The extent to which the above principle applies is revealed in a case like Robinson v. Singing River Hospital System, 732 So.2d 204, 207-209
CT Page 11806 (Miss. 1999) where the court rejected a fraudulent concealment argument in a situation where a physical therapist even actively altered treatment records. The court ruled that the alteration of the records did not hinder the patient from discovering that he was injured as a result of negligence during physical therapy where a doctor who had prescribed ultrasound rather than hot packs because of lack of feeling in the patient's extremities treated the patient for the burns caused by the negligence for over a year. Id., p. 209
What must also be considered under the fraudulent concealment claim is the nature of the relationship between the plaintiff and the hospital. While the plaintiff was in the hospital from April 29 to July 2, 1996, the hospital had a fiduciary relationship with the plaintiff. It has been held that a fiduciary relationship has important consequences for application of fraudulent concealment statutes. Thus, where a relationship of trust and confidence exists which would impose a duty of full disclosure of the fads, mere silence or non-disclosure may constitute a concealment that will toll the statute. Duncan v. Leeds, 742 F.2d 989,992 (CA 6, 1984); Jenkins v. Jenkins, 444 N.E.2d 1301, 1303 (Mass. 1983). A Connecticut case, for example, held that where a trustee has fraudulently concealed his misappropriation of trust funds until his removal, the limitations statute does not start to run under § 52-595
until his removal, since no cause of action came into existence until discovery of the misappropriation. State v. Northrop, 93 Conn. 558, 564
(1 919).
But even where a relationship of trust and confidence exists between parties a lack of all diligence is not excused. Ramsey v. Child Hulswit Co., 165 N.W. 936, 941 (Mich. 1917); McFadden Weiss Kyle Land Co. v.Texas Rice Land Co., 253 S.W. 91 6, 925 (Tex. 1923). Why should it be so excused at least in a case where there is no ongoing debilitating physical or mental condition which prevents the injured party from discovering the cause of action? Also, after the plaintiff's discharge the hospital does not appear to have had, and there is no claim that it had, an ongoing treatment relationship. Again, there is no indication from what has been submitted that the plaintiff could not have requested his medical records after he was discharged or nor is there anything to adequately establish that such a request would have been refused. Under these circumstances what was the hospital to do — because it oncehad a fiduciary relationship with the plaintiff did it somehow have an obligation to send him a reminder notice that the time for him to bring suit was running out? The law of fiduciary obligation does not run that far. The motion for summary judgment is granted.[1]
Corradino, J. CT Page 11807