(91 South. 357)

FIQUETT v. WADE ELECTRIC LIGHT & POWER CO.   (5 Div. 798.)

(Supreme Court of Alabama.   Oct. 27, 1921. Rehearing Denied Nov. 17, 1921.)

1. Electricity ⬤⟿17—Electric light company held liable for injury from wire which another agreed to keep up.

Where defendant supplied electric current to H.'s office under an agreement that H. was to keep up the wires, and a wire leading from H.'s office to a planing mill supplied with electricity by defendant fell and killed plaintiff's mule, defendant was liable.

2. Appeal and error ⬤⟿1008(1)—Where judgment was founded on mistake in law, rule that it will not be set aside unless against preponderance of evidence does not apply.

Where the trial court's judgment is founded on a mistake in law, the rule that in cases tried by the court the judgment will not be disturbed unless the preponderance of evidence against it is so decided as to clearly convince the court that it is wrong does not apply.

Appeal from Circuit Court, Chilton County; B. K. McMorris, Judge.

Action by W. J. Fiquett against the Wade Electric Light & Power Company. Judgment for the defendant, and the plaintiff appeals. Transferred from Court of Appeals, under section 6, Acts 1911, p. 450. Reversed and rendered.

Curry & Walker, of Clanton, and Hill, Hill, Whiting & Thomas, of Montgomery, for appellant.

The trial court erred in rendering judgment for the defendant. 246 Pa. 141, 92 Atl. 124; 251 Pa. 79, 96 Atl. 135; 135 Ky. 611, 117 S. W. 278, 22 L. R. A. (N. S.) 1169; 108 Ky. 224, 56 S. W. 153, 53 L. R. A. 147. The court erred in its ruling on the evidence. 200 Ala. 221, 75 South. 979; 171 Ala. 323, 54 South. 620; 179 Ala. 372, 60 South. 304.

Lawrence F. Gerald, of Clanton, for appellee.

Counsel insists that the authorities cited by appellant do not support the theory contended for by appellant, and that the case should be affirmed. 71 South. 685; 166 Ala. 482, 52 South. 86.

GARDNER, J. Appellant's mule was killed as a result of coming in contact with an uninsulated wire charged with electricity, and this suit was brought against the appellees A. C. and J. Q. Wade, individually and as partners under the firm name of Wade Electric Light & Power Company, to recover damages therefor. The cause was tried before the court without a jury, resulting in a judgment for the defendants, from which the plaintiff prosecutes this appeal.

The mule was killed while being driven along the road, which was used by the public generally in going to and coming from a certain planing mill of one Robinson. The wire causing the death of the animal was suspended across this road or passageway some 12 or 16 feet from the ground, and had in some unknown manner been broken and fallen to the ground, and was charged with electricity from the plant of defendants in the town of Clanton, being used to convey the current to the Robinson mill. The wire was uninsulated, a fact admitted to have been known by the defendants, as shown by the testimony of A. C. Wade, who testified "that he knew the wire was there, and he knew that this current was going over it, and that he knew it was an uninsulated wire."

The trial court, as shown by the opinion found in the record, rendered judgment for the defendants upon the theory that this particular wire constituted what is denominated an "inside line," to be maintained by the party upon whose property it was situated, and that therefore no duty rested upon the defendants.

[1] Counsel for appellant cite authorities to the effect, however, that under the view held by the trial court knowledge on the part of the defendants of the dangerous and defective condition of the wire would have sufficed to have taken the case from the general rule, and fixed liability upon the defendants. 20 Corpus Juris, 365; Pressley v. Bloom, etc., Ry. Co., 271 Ill. 622, 111 N. E. 511; Curtis on Law of Elec. § 417; Hoffman v. Leavenworth Light Co., 91 Kan. 450, 138 Pac. 632, 50 L. R. A. (N. S.) 574; San Antonio Gas, etc., Co. v. Ocon, 105 Tex. 139, 146 S. W. 162, 39 L. R. A. (N. S.) 1046.

With the view entertained here, after a careful analysis of the evidence, a consideration of the principle recognized in these authorities is rendered unnecessary, as we are of the opinion, under the undisputed evidence in the case, the defendants' liability rests upon another principle as shown by authorities hereinafter noted. A brief reference to the testimony therefore is necessary. One Higgins maintained an office building facing a public street in the town of Clanton, and to the south of this for some distance he owned property adjacent to the lot on which said office building was situated. At the south end of this lot, a distance of a few hundred feet, was situated a planing mill. Higgins owned the ground between the office building and the planing mill, as well as the mill itself. A roadway entered this lot near the office building, and ran toward the planing mill, over which the public traveled for the purpose of hauling to and from the mill. The defendants operated an electric light plant in Clanton, and sold and delivered electric current to various people. The planing mill was operated by one Robinson in his own behalf. From this mill the defendants had gotten "shavings," first, as a matter of accommodation, but, later discovering that the "shavings" had become of value, decided to furnish Robinson with electricity, stating, however, that they did not "swap lights for shavings," but gave him the electricity because they thought he deserved it. They first supplied the mill with lights from across the lot of one Dr. Hays from Seventh street, and the line running from Seventh street over to the mill was the line of the defendants. Higgins also desired current for his office, and defendants agreed likewise to give him current, provided he would put up the wires and maintain them, which he agreed to do. Robinson occupied a house only a few feet from Higgins' office, and defendants connected the wire from Robinson's house to Higgins' office. The planing mill was then connected with the wire from the corner of Higgins' office, which was a distance, according to one witness, of 200 feet; but, according to the testimony of A. C. Wade, one of the defendants, it was a distance of 200 yards. This was the wire that ran across the roadway previously noted and which broke, causing the death of plaintiff's mule.

The defendants seek to escape liability because of the fact that this wire was erected by Higgins, who agreed to maintain the same, and that therefore no duty rested upon them in the premises. The accident occurred about halfway between Higgins' office and the Robinson planing mill. This line was used to convey the defendants' current of electricity to Robinson's planing mill, and this electricity was being furnished for Robinson, and not for Higgins; this line being substituted for the service of current to the Robinson mill for the defendants' line by which it originally served the mill from Seventh street.

The foregoing facts are gathered largely from the testimony of A. C. Wade himself,

Under this evidence the sole question remaining is whether or not the defendants escape liability because they did not erect or own the wire and the alleged agreement of Higgins to maintain the same. We think not, both upon authority and reason. The wire was used by the defendants to convey their current of electricity to the planing mill of Robinson, and was suspended over a roadway used by the general public going to and from the mill. The danger of electricity is well known, and those who supply to the public are required to recognize this fact and to exercise care commensurate with such danger. The principle here involved was considered by the Supreme Court of Pennsylvania in Daltry v. Electric Lt., etc., Co., 208 Pa. 403, 57 Atl. 833, the court saying:

"The ownership of the wire cannot affect the company's liability for failure to observe this duty under the facts disclosed by the evidence in this case. When charged with its electricity the wire was in the possession and control of the company so far as concerned its duty to keep it in repair and in proper condition and position to protect those who might come in contact with it. The danger lay not in the wire, but in the 'subtle fluid' sent through it by the defendant company. * * * The use of the wire by the defendant, and not the wire itself, caused the injury to the child. Hence, it logically follows that, notwithstanding the ownership of the wire may have been in another, the defendant company must be considered as in possession of, and as using, it at the time of the accident and, therefore, responsible for any injury resulting from the failure to inspect and keep it in proper condition and repair when charged with the company's electricity."

The case of Fedorawicz v. Citizens' Elec., etc., Co., 246 Pa. 141, 92 Atl. 124, is still more directly in point. The plaintiff in that case was injured by coming in contact with a broken wire on defendant's electric line, and the negligence charged was in permitting this wire to remain upon the highway for a long time previous to the accident. The line of wire had been constructed to furnish power to a lumber company operating a mill some two miles distant from defendant's power plant at the cost and expense of the latter. In order to relieve itself from liability for this broken wire, the defendant electric company offered to show the contract between itself and the lumber company, by the terms of which the latter obligated itself to properly maintain and safeguard the line at its own cost, and all that was required of defendant was to furnish for a stipulated consideration the necessary electric power. The trial court denied the proof, and the Supreme Court of Pennsylvania, in affirming the action of the lower court, rested the ruling upon Daltry v. Electric Company, supra, saying:

"The negligence that permitted this broken wire to remain for considerable time on the highway was the negligence of the party using the wire to convey the electric current it furnished and controlled. So much was expressly ruled in Daltry v. Elec. Lt., etc., Co., 208 Penn. 403."

This same court cited with approval these cases in Milton Weaving Co. v. Northumberland Co. Gas, etc., Co., 251 Pa. 79, 96 Atl. 135, distinguishing that case, however, from the others upon the theory that the latter dealt with cases of injury to third persons, while there the question arose between the company and the consumer. See, also, in this connection Hebert v. Hudson River Elec. Co., 136 App. Div. 107, 120 N. Y. Supp. 672; Blackburn v. S. W. Mo. R. Co., 180 Mo. App. 548, 167 S. W. 457; Curtis on Law of Elect. § 416; 20 Corpus Juris, 365, 366.

The defendants were using this line for the purpose of furnishing current to Robinson's mill, and not to Higgins, and the mere fact that Higgins may have entered into an agreement with defendants to maintain this line did not relieve the defendants from responsibility to third persons under the circumstances in this case, for the line, so far as the public was concerned, had become a part of the defendants' system. The Fedorawicz Case, supra, is directly in point, and is, we think, well supported by reason and common sense.

[2] Our conclusion is therefore that, accepting that view of the evidence most favorable to the defendants, the plaintiff made out a case of liability against them, and should have recovered. We recognize, of course, the well-established rule that in cases tried by the court with the witnesses before him the judgment must have the effect of a verdict of the jury, and will not be disturbed unless the preponderance of the evidence against it is so decided as to clearly convince the court that it is wrong and unjust. Here, however, we are of the opinion the trial court took an erroneous view of the law as applied to the undisputed facts, and the above-stated rule is therefore without application. Murphree v. Hanson, 197 Ala. 246, 72 South. 437. The evidence was without dispute that the mule was of the value of $400.

The judgment of the court below will be reversed, and one rendered for plaintiff in the sum of $400.

Reversed and rendered.

ANDERSON, C. J., and SAYRE and MILLER, JJ., concur.