**BLUE RIDGE RURAL ELECTRIC CO-OPERATIVE, Inc., Appellant,**

v.

**James Earl BYRD, Appellee.**

No. 7183.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 24, 1958.

Decided Dec. 30, 1958.

On Rehearing March 9, 1959.

Ray R. Williams and Wesley M. Walker, Greenville, S. C. (Leatherwood, Walker, Todd & Mann, and Williams & Henry, Greenville, S. C. on brief), for appellant.

Henry Hammer and Henry H. Edens, Columbia, S. C. (William E. Chandler, Jr., Columbia, S. C. on brief), for appellee.

Before SOBELOFF, Chief Judge, SOPER, Circuit Judge, and BRYAN, District Judge.

SOPER, Circuit Judge.

On the first appeal in this case, Byrd v. Blue Ridge Rural Electric Cooperative, Inc., 4 Cir., 215 F.2d 542, we held that the Cooperative was not a charitable organization free from liability for torts of its agents and remanded the case for trial on its merits. The trial resulted in a judgment of $126,786.80 in favor of Byrd, who lost both forearms when he accidentally came in contact with a live wire while on a construction project extending the Blue Ridge system in South Carolina. Blue Ridge appealed and we reversed the judgment and directed the entry of the judgment for the defendant. 4 Cir., 238 F.2d 346. Our decision was based on the holding that Blue Ridge had complied with the Workmen's Compensation statute of South Carolina and that Byrd's remedy was confined to compensation under that act. The Supreme Court granted certiorari, 352 U.S. 999, 77 S.Ct. 557, 1 L.Ed.2d 544, and after reargument, 355 U.S. 950, 78 S.Ct. 530, 2 L.Ed.2d 527, reversed our decision, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953, on the ground that the facts had not been sufficiently developed in the District Court and remanded the case for further proceedings. The facts necessary to an understanding of the situation may be summarized as follows.

Byrd was an employee of R. H. Bouligny, Inc., a construction company which was doing certain construction work under contract for Blue Ridge, and the accident happened when he was instructed by a foreman of Bouligny to do some work upon a line which, through a mistake of another foreman of Bouligny, had been improperly energized. Bouligny had complied with and was operating under the Workmen's Compensation Act of South Carolina, Title 72 of the South Carolina Code of 1952. After the accident Byrd claimed and was paid full benefits under the statute by Bouligny. He then brought the present suit against Blue Ridge, claiming that the accident was due in part to its negligence. Blue Ridge had also complied with the compensation statute, which provides in § 72–111 that when an owner contracts with any other person for the execution of any work which is a part of the owner's trade or business, the owner shall be liable to pay to any workman employed in the work any compensation under the statute which he would have been liable to pay if the workman had been his immediate employee. Rights and remedies granted by the statute to an employee are exclusive of all other rights and remedies.

Blue Ridge defended the suit on the grounds that the accident was not due to its negligence but to the negligence of Bouligny and the contributory negligence of Byrd, and that even if Blue Ridge was was negligent the plaintiff's only remedy was afforded by the compensation act since the work being done was part of the business of the Cooperative. The District Judge held that this defense was based on a wrong interpretation of the statute and submitted the questions of negligence and contributory negligence to the jury with the result stated above. In reversing the judgment, we did not pass on the sufficiency of the evidence to show negligence on the part of the Cooperative, but held that it was exempt from liability because of its compliance with the Compensation Act.

The Supreme Court accepted our interpretation of the statute, and did so the more readily since neither party disputed it in that Court, but the Court reached the conclusion that the plaintiff had not had an opportunity in the District Court to present evidence as to whether Blue Ridge was in fact his statutory employer and that on this issue he was entitled to a jury trial in the Federal court, notwithstanding State decisions to the contrary. Accordingly, the case was remanded to this court for decision of the undecided questions with instructions that, if not made unnecessary by the decision of such questions, the case should be remanded to the District Court for a new trial on such issues as we might direct.

We consider first the plaintiff's contention that the accident was due in part to the negligence of one Ira Moss, a lineman in the employ of Blue Ridge, who energized the line with which the plaintiff came in contact under the following circumstances. The contract called for the construction by Bouligny of 24.19 miles of new lines, two substations and a breaker station, and also the change or conversion of 87.69 miles of old lines. The service to the consumers on the old conversion lines was necessarily interrupted from time to time during the construction work, and the contract set out the procedure to be followed so as to minimize the interruption of the service and at the same time guard the safety of all concerned. Bouligny agreed to plan the work on the existing lines so that they might be de-energized during certain periods of the day and safely re-energized at the expiration of these periods. It was agreed that prior to the commencement of the work each day, Bouligny would notify Blue Ridge in writing of the lines to be de-energized and thereupon Blue Ridge would de-energize them, and that upon completion of the work each day Bouligny would notify the owner in writing, or in such other way as the circumstances would permit, and designate the lines to be re-energized and upon receipt of the no-

tice the owner would re-energize them. Ira Moss, a lineman employed by Blue Ridge, was designated by it to de-energize and re-energize the lines in accordance with this program.

Bouligny also agreed to provide constant supervision of the work by a competent superintendent, present at all times during working hours, and to employ capable and experienced foremen and skilled workmen for the work to be performed, and also to take all reasonable precaution for the safety of employees on the work and the safety of the public. Bouligny also agreed that at no time and under no circumstances should any of his employees be caused or permitted to work upon energized lines or upon poles carrying energized lines unless otherwise specified in the instructions to the bidders. During the period of construction Bouligny was given possession, management and control of the project and became liable for the upkeep of the project and for any damages which might result from his negligence or from acts of God or from any other cause.

The accident happened on a conversion line which was connected with a transmission line on a public highway and ran thence at right angles to the highway to furnish electric energy to an area known as the Ebenezer Community. Under the contract a portion of this line as it approached the highway was relocated so that upon completion of the work it would run to and receive electric energy from a new substation, known as the Walhalla Substation, which was being constructed by Bouligny on the highway at a point 1250 feet distant from the highway end of the Ebenezer line. During the course of the work Bouligny's workmen installed an insulator on the outside of the substation and ran a line from it to a pole 75 feet away and continued the line from the pole to the Ebenezer line at a point two or three spans from the old connecting point on the highway. On the way, this line crossed a tap line which served the Ebenezer Community.

The contractor intended that the new portion of the Ebenezer line running from the substation to the pole 75 feet away should not be energized until the substation was completed, and this was to be accomplished by leaving a disconnect on the pole. By an unfortunate mistake of a foreman of Bouligny a permanent jumper or union was installed on the pole so that when the Ebenezer line was energized the current did not stop at the pole but ran through the jumper on the pole to the insulator at the substation.

This was the situation on Friday, February 13, 1953. In the morning of that day Ira Moss de-energized the Ebenezer line and in the afternoon cut the current back, in each case acting upon notice from Bouligny as required by the contract; but no one realized that the portion of the Ebenezer line which ran from the pole to the substation was thereby energized. On the following Tuesday, February 17, at a time when the line was energized, the plaintiff, accompanied by a foreman of Bouligny, went to the Walhalla Substation to do some work. They noticed that the line had been run from the substation to the pole but did not test it and did not realize that it was energized. The foreman directed the plaintiff to climb up the substation and to make a connection between the live wire at the insulator on the outside to a point inside the station. In doing so he came in contact with the wire and was burned.

It is conceded that the mistake in placing a permanent jumper or union on the pole was due solely to the negligence of Bouligny's men without participation on the part of the employees of Blue Ridge. But it is nevertheless contended, for several reasons, that Blue Ridge's employee Moss was negligent in turning the current into the line.

First, it is said that Moss did not comply with the terms of the notice given by Bouligny's foreman Phillips to energize the line. There was testimony that on February 13, a

number of workmen, including Phillips and Moss, were at the substation at the end of the working day and that Phillips notified Moss to re-energize the Ebenezer line and also told him that the line was finished into the substation and that he should check with Blue Ridge's engineer and see if everything was right. The plaintiff claims that Moss was warned by this instruction not to turn on the current until the engineer had given his approval, but the testimony shows that the engineer had no part in de-energizing or re-energizing the line, and hence the question has arisen as to whether this testimony merely indicates that the engineer was to be notified that the construction on the line was complete and that the work was ready for inspection, approval, and acceptance in accordance with the terms of the contract.

Secondly, it is said that Moss had actual knowledge that the line to the substation would be energized if he turned the current into the Ebenezer line. There was evidence that when Moss and Phillips on Friday afternoon were standing at the substation 75 feet from the pole, Moss was in position to see that the line into the substation was complete, and that if he had looked he could have seen the jumper on the pole, since he was looking up at it. The question arises as to whether it may be fairly inferred from this testimony Moss actually saw or merely could have seen the jumper.

Thirdly, it is said that it was the duty of Moss to inspect the lines himself before turning on the current. Expert evidence was given on behalf of the plaintiff by an electrical engineer that a person who is responsible for connecting existing power lines with new lines should inspect the old and new lines, and the connections between, before energizing the old line. It is questioned, however, whether this opinion applied to the facts of this case since the witness had no knowledge of the terms of the contract whereby Bouligny became the party responsible for directing the turning off and on of the current so that it was turned off and on by Blue Ridge only when it was notified to do so.

These questions are not susceptible of definite answer in the present state of the record, and hence we cannot say conclusively that there was no evidence of negligence on the part of the defendant's lineman. Moreover, questions which go to the heart of the case relate to the charge of the court insofar as it holds that the undertaking was inherently dangerous and that Blue Ridge was liable for the negligent performance of the work notwithstanding its employment of an independent contractor. It is generally held that an owner is liable for injuries incurred during the performance of work by an independent contractor if the work is of such character that injuries may be expected however carefully the work is performed; and in other decisions the liability of the owner has been held to include injuries that might be expected unless precautions were taken to prevent them. See the annotations in 23 A.L.R. 1016–1081 and 1084–1135, also, International Harvester Co. v. Sartain, 32 Tenn.App. 425, 222 S.W.2d 854; Fiquett v. Wade Electric Light & Power Co., 206 Ala. 630, 91 So. 357; Person v. Cauldwell-Wingate Co., 2 Cir., 176 F.2d 237; Harper & James, Law of Torts, Vol. 2, § 26.11 at pages 1408–1410; Prosser on Torts, § 64; Restatement of the Law of Torts, §§ 413, 416, 423; 27 Am.Jur., Independent Contractor, §§ 38, 39; 57 C.J.S. Master and Servant § 590. There is also the question as to whether the liability of the owner in such cases extends not only to third persons but also to the employees of the independent contractor. See the annotations in 44 A.L.R. 932–1133; 23 A.L.R. 1129–1135.

Objection is also made to portions of the charge, granted at the request of the plaintiff, wherein the standard of care to be exercised by the defendant in

694

the performance of the work is variously defined as "a high degree of care commensurate with the dangers involved in the project," "due care," "reasonable care," or "the very highest degree of care practicable to avoid injury". All of the above questions will be open for decision upon the new trial and must be decided in accordance with the law of the State of South Carolina. See Parsons v. Charleston Consolidated Ry., Gas & Electric Co., 69 S.C. 305, 48 S.E. 284; Lundy v. Southern Bell Telephone & Telegraph Co., 90 S.C. 25, 72 S.E. 558; Hill v. Carolina Power & Light Co., 204 S.C. 83, 28 S.E.2d 545; Mitchell v. Charleston Light & Power Co., 45 S.C. 146, 22 S.E. 767, 31 L.R.A. 577; Elliott v. Black River Elec. Cooperative, S.C., 104 S.E.2d 357.

■ It will also be necessary, in accordance with the mandate of the Supreme Court, to submit to the jury upon the new trial the question whether the work covered by the contract was part of the trade or business of Blue Ridge, bearing in mind that the contract covered both the construction of the new Walhalla Substation and the improvement and extension of the existing Ebenezer line, and that the plaintiff was injured while handling the extension of the Ebenezer line and endeavoring to connect it with the interior of the substation.

It is objected that the District Judge wrongfully withheld the fact from the jury that the plaintiff received compensation from Bouligny under the South Carolina statute. We think this decision was correct. See Sprinkle v. Davis, 4 Cir., 111 F.2d 925, 128 A.L.R. 1101.

As the case must be returned to the District Court we grant the request of both parties that a new trial be had on all questions involved.

Reversed and remanded for further proceedings.

On Petition of Appellant for Rehearing.

PER CURIAM.

The rehearing sought by the appellant is directed at our agreement with the trial court's retention from the jury of any knowledge of the receipt by the appellee of workmen's compensation paid by his employer, Bouligny.

■ The first point is that, as the remanding opinion of the Supreme Court made a jury question of the issue of whether the work let to Bouligny was a part of the appellant's trade or business, seemingly the coverage of appellee by Bouligny in compliance with The South Carolina Workmen's Compensation Law, and the appellee's acquiescence therein, are facts material to this issue. 1952 Code, § 72–1 et seq. On this point we stand by our prior conclusion.

Payment and receipt of compensation were neither evidential of the scope of appellant's activities. Whether or not the job was within appellant's usual enterprises, Bouligny was obligated, or certainly well advised, under the State Act to afford compensation to the appellee as its employee. 1952 Code, § 72–118. Likewise, the latter's acceptance did not commit him to the view that appellant was the general contractor as well as the owner, for he still would profit by any recovery against appellant in excess of the compensation. 1952 Code, § 72–125.

Not previously raised in the case, the other point now made in the petition is that, inasmuch as appellee's acceptance of compensation automatically, under the State statute, assigned any right of action for his injuries to his employer, the suit cannot be maintained without a showing that the appellee primarily sues for the benefit of Bouligny, and this can be done only by proof of the provision and payment of compensation by Bouligny. Without this proof, appellant contends, it might be subjected to another action by the statutory assignee. 1952 Code, § 72–124.

■■ We, too, think the record ought to show Bouligny to be a use-plaintiff, but we still think this interest is not now relevant to the jury issue. Therefore, the evidence should be admitted before the trial judge only, without disclosure to the jury, unless controverted or unless

some other basis for its admission develops in the trial, such as its pertinency to credibility of witnesses, or otherwise, as in Sprinkle v. Davis, 4 Cir., 111 F.2d 925, 931, 128 A.L.R. 1101. In the last event, the amount of the compensation must be kept from the jury, the irrelevance or limited relevance of the compensation award to a present recovery should be explained to them, and the purpose of the evidence strictly confined in argument as well as sharply circumscribed in the charge. Cf. 1952 Code, § 72–127.

An order will be entered remanding the case for a new trial in accordance with the original opinion as now modified.