**Robert E. THOMAS, to his own use and to the use of St. Paul Mercury Insurance Company, a body corporate**

v.

**HANOVER STEAMSHIP CORPORATION, a body corporate.**

**Civ. A. No. 10242.**

United States District Court
D. Maryland.

May 5, 1960.

538

Paul Berman, Baltimore, Md., for plaintiff.

Randall C. Coleman, Jr., and Southgate L. Morison, Ober, Williams, Grimes & Stinson, Baltimore, Md., for defendant.

R. DORSEY WATKINS, District Judge.

Memorandum on Motions

(a) To Quash Subpoena, and

(b) For an Order Under 28 U.S.C.A. § 1292(b)

(a) Motions to Quash Subpoena.

█ Plaintiff served on defendant a subpoena duces tecum for production of, and testimony as to, an indemnity undertaking by Ramsay, Scarlett & Co., Inc. (Ramsay) in favor of defendant. Ramsay and defendant have moved to quash the subpoena. A brief background statement is essential to an understanding of the issues.

Plaintiff, a longshoreman, sued defendant, as owner of a vessel on which plaintiff, while working as a longshoreman, sustained serious permanent injuries, allegedly because of the unseaworthiness of the vessel and negligence of the defendant. Defendant filed a third-party complaint against Ramsay, the stevedore (and plaintiff's employer) on the now-

familiar grounds that the stevedore had contracted to unload the vessel in a proper and careful manner, and that, any unseaworthiness of the vessel or negligence of defendant being specifically denied by defendant, plaintiff's injuries, if any, were occasioned by failure of Ramsay so to perform its contract.

An amended complaint was filed by plaintiff against defendant, in which Ramsay's Longshoremen's and Harbor-workers' insurance carrier was named as a use-plaintiff, a further element of alleged unsafe and unseaworthy condition was added, and several other minor changes were made. Defendant answered, but did not file any third-party proceedings against Ramsay.

The suit was defended by defendant's counsel. Several of Ramsay's supervisory personnel were called as witnesses by defendant, including one of its Vice Presidents, Rexford L. Wheeler. At the Bench, counsel for plaintiff indicated his intention to cross-examine Wheeler as to his "bias and interest", for the purpose of discrediting his testimony. A brief discussion was had, which was continued the next day in the presence of counsel for Ramsay. The existence of an indemnity undertaking by Ramsay in favor of defendant was developed, and counsel for plaintiff insisted that he was entitled to have this filed as an exhibit, and to cross-examine Wheeler with respect thereto. Counsel for defendant objected and counsel for Ramsay opposed plaintiff's position.

Counsel for Ramsay stated that Ramsay had "very substantial" insurance coverage, and that counsel had advised Ramsay that in his opinion a verdict against the defendant for approximately the amount of the coverage would (assuming defendant were liable) be the most satisfactory outcome from Ramsay's standpoint, because an appeal from a verdict of that size would be unlikely; Ramsay's insurance carrier would pay; and Ramsay's liability under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.,

would be discharged and its experience rating improved.

The court felt, and feels, that the disclosure of the details of this arrangement would almost inevitably cause far greater harm to the defense of the case than the possible legitimate benefit to plaintiff would justify. Abstractly, and concretely as questions by the jurors during the trial made clear, the concept that the vessel is liable, without regard to fault, for a condition of unseaworthiness, or unseaworthiness resulting from negligence, physically attributable to the acts or omissions of an independent contractor, the stevedore, is not an easy one for a jury to grasp or accept. If, in addition, it appears that although the vessel be held for the fault of the stevedore (or more accurately, of the stevedore's employees, assuming the jury should find that the equipment furnished by, or the manner of its rigging by, such employees made the vessel unseaworthy) this can be passed on to the insured stevedore, the temptation to bring in a verdict against the vessel, regardless of legal principles, would be great; perhaps too great to resist.

The court did not and does not believe that the opinions on petition for rehearing in Blue Ridge Rural Electric Cooperative, Inc. v. Byrd, 4 Cir., 1959, 264 F.2d 689, 694–695, or in Sprinkle v. Davis, 4 Cir., 1940, 111 F.2d 925, 931, 128 A.L.R. 1101, require any such unjust result. The court did believe, however, that the possible interests of Ramsay and Wheeler should be developed so that bias and interest could be argued within reasonable limits. The court therefore permitted Wheeler to be asked whether Ramsay or he had any interest in the outcome of the case. The answer that Ramsay's counsel stated to be correct under counsel's knowledge and advice was:

"I am advised by counsel for Ramsay Scarlett that Ramsay Scarlett may have some financial interest in the outcome of the case. I have no personal financial interest in the

**540**

outcome of the case, but of course I am interested in having my operating procedures found to be proper."

Counsel for Ramsay discussed this with Wheeler, who from the stand gave the answer above set forth. Counsel for plaintiff objected to any limitation. The indemnity agreement was offered by plaintiff (having been identified to his counsel but without opportunity for counsel to read it) out of the presence of the jury, was not admitted into evidence, and was marked as a plaintiff's exhibit for identification, and placed in a sealed envelope, to be available in the event of an appeal.

Plaintiff's counsel vehemently argued to the jury that Wheeler was willing to sacrifice the plaintiff to satisfy his, (Wheeler's) ego, and in the opinion of the court was able to and did argue interest and bias to the full extent that justice permitted.

The jury was unable to agree upon a verdict and was, therefore, discharged from further consideration of the case.

The present subpoena duces tecum would lead to a reopening of the same question upon which the court ruled in the course of the trial. The court has reconsidered its ruling but is satisfied with the correctness thereof.

The motions to quash the subpoena duces tecum are accordingly granted, and the subpoena is ordered quashed.

■ (b) Motion for Order under 28 U.S.C.A. § 1292(b).

28 U.S.C.A. § 1292(b) reads as follows:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court

of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."

Plaintiff's counsel has requested the court that if it grants the motions to quash the subpoena duces tecum, it include in the order a statement that the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." In support of that position United States v. Woodbury, 9 Cir., 1959, 263 F.2d 784, is cited, and particularly the statement in the opinion in that case that a question sought to be brought up on interlocutory appeal need not be "dispositive of the lawsuit in order to be regarded as controlling" (263 F.2d at page 787). Three instances were cited by the court in which this distinction would apply: the first, that of an order granting or denying a motion to join a third-party defendant. This illustration was found in Senate Report No. 2434, 85th Congress, Second Session (1958 United States Code Congressional and Administrative News, pages 5255, 5256). The other two examples given in the Senate Report were denial of a plea of limitations, and denial of a motion to dismiss for want of jurisdiction. The Ninth Circuit also cited Deepwater Exploration Co. v. Andrew Weir Ins. Co., Ltd., D.C.D.La.1958, 167 F.Supp. 185 (indicating an order transferring a cause where it was claimed the transferee court did not have jurisdiction was an appealable order under section 1292(b)) and United States v. View Crest Garden Apts., Inc., 9 Cir., 1958, 265 F.2d 205 (where the appealed order determined that the rights of the United States were governed by state

instead of federal law, and therefore denied a receivership). In the Woodbury case, the Ninth Circuit did not (although the district court did) consider that an order striking the Government's answer and counterclaim for failure to comply with an order requiring the production of documents presented a "controlling question of law."

A fortiori, it would seem to the court that the question here involved as to a ruling in the course of the trial on questions going to possible interest and bias is not a "controlling question of law"; nor does the court see how its answer by interlocutory appeal would "materially advance the ultimate termination of the litigation".

The motion for an order under 28 U. S.C.A. section 1292(b) is denied.